44 So.2d 634

**FAGAN v. STATE.**

2 Div. 790.

Court of Appeals of Alabama.

June 21, 1949.

Rehearing Denied July 19, 1949.

A. A. Carmichael, Atty. Gen., and Robert Straub, Asst. Atty. Gen., for the State.

Franklin C. Evans and Rogers & Evans, Butler, for appellant.

CARR, Judge.

This appeal follows a judgment of conviction in the lower court for the offense of grand larceny, more specifically the theft of three cows.

There is no factual doubt that the three animals were feloniously taken from the pasture of the owner, Mr. Chester Mason.

Ernest Clifton and David Bowden each testified at the trial, and both admitted their participation in the commission of the crime. If the testimony of these two parties is to be accepted as true, the criminal complicity of the appellant cannot be denied.

■ The accused was convicted of a felony, and, of course, his conviction cannot be sustained unless the testimony of the admitted accomplices is corroborated by other evidence tending to connect the defendant with the commission of the offense. Title 15, Sec. 307, Code 1940.

The decision of this matter constitutes the prime question for our review. We will delineate the tendencies of the evidence which are pertinent to this inquiry.

According to the testimony of the accomplices, David Bowden was at the home of Ernest Clifton on the night of the theft. The appellant came to the latter's house about 7:30 or 8 o'clock P. M., and it was then and there agreed that the cows would be taken from the pasture and Clifton's truck would be used in hauling the animals. About two and one-half hours later, Clifton and Bowden proceeded to Mr. Mason's pasture and picked up the defendant en route. The three indicated parties loaded the cows in Clifton's truck and Bowden, alone, carried them, the same night, to Hattiesburg, Mississippi, and there sold them. He returned forthwith. The night following the time of the theft, the appellant again came to Clifton's home and there the proceeds from the sale of the cows were equally divided among the three persons.

Mrs. Ernest Clifton testified that she had known the defendant all her life; that he was a rural mail carrier, and that she had seen him frequently; that she was familiar with his automobile and she knew his voice when she heard it.

On the basis of this acquaintanceship, she testified that the appellant came to her home around 8 o'clock the night Mr. Mason's cows were stolen. She stated also that her husband and Bowden joined the defendant in her front yard and there remained for about thirty minutes. She did not understand any part of the conversation. She testified that later her husband and Bowden left in the truck and said Mr. Fagan had some cows that he wanted hauled.

Mrs. Clifton also testified that the appellant came to her home on the next night and was again joined in her yard by her husband and Bowden. She did not hear any of the conversation on this occasion.

Olin Bird lived across the road and a short distance above the home of Ernest Clifton. Mr. Bird testified that he was well acquainted with appellant and was familiar with his car; that on the night the cows were stolen Mr. Fagan passed witness' home and stopped at Clifton's house. Appellant was traveling in his automobile. Mr. Bird fixed the time as the early part of the night.

The accomplices testified that when they reached Mr. Mason's pasture they found the three cows already "tied out in a little thicket."

We quote here a portion of Mr. Mason's testimony:

"Q. After you returned with your cattle did you go back to this particular place where they were loaded and make a further examination? A. I certainly did.

"Q. Did you find any physical evidence of some of your cattle having been tied in your pasture? A. Yes, sir.

"Q. Will you tell the jury just what you found. A. I found those cluster of bushes, a few sweetgum bushes and oak trees, probably a pine sapling or two, but mostly hardwood, but very definitely something had been hitched there. The ground was all cut up and the bark was slick on the trees.

"Q. How many places like that did you find? A. Three.

"Q. Did you see any human tracks? A. On the first trip, yes, sir.

"Q. Where were those human tracks with relation to where the cattle were loaded? A. Evidently the cows must have dragged them, they must not have been man enough to load them right on. There were three definite tracks, one plain soles, one non-skid and one with rubber.

"Q. You saw three definite tracks. A. Yes, sir.

"Q. Did you follow those tracks? A. Not very well. On the outside tracks there were only two tracks.

"Q. You did see those three sets of tracks? A. I saw three sets inside and I saw a piece of a bull ring and I saw the wheels and the truck tracks."

There was evidence in defendant's behalf which tended to show that the place in the pasture where the cows were loaded was accessible to pedestrian travel and the tracks could have been made by passers-by. This, of course, went to the weight of the evidence.

The appellant denied that he made the two indicated visits to the home of Clifton. He disclaimed also any participation whatsoever in the loading of the cows and any connection with the commission of the offense. His defense was an alibi which he supported by the testimony of several witnesses.

■ The above includes all the tendencies of the evidence which are, in our view, salient to the matter of instant moment.

As we observed in Brown et al. v. State, 31 Ala.App. 529, 19 So.2d 88, 90: " 'Corroborate' in its legal significance, as in this case applied, means to strengthen. It must be some fact or facts which will strengthen the testimony of the accomplice. It is not necessary that it tends to establish or prove the exact facts stated by the accomplice. It must be sufficient and of such probative value, however, to connect the defendant with the commission of the crime." See also, Hodge v. State, 32 Ala.App. 283, 26 So.2d 274; Smith v. State, 230 Ala. 413, 161 So. 538; Dykes v. State, 30 Ala.App. 129, 1 So.2d 754.

"The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt." Sorrell v. State, 249 Ala. 292, 31 So.2d 82, 83.

"Corroborative evidence consists of two kinds: (1) Facts and circumstances ascertained in checking up on accomplice's testimony which tend to support the truth of his testimony or vice versa. (2) That which tends to connect the accused with the crime." 22 C.J.S., Criminal Law, § 809, page 1388.

■ The conditions and provisions of the statute do not require that corroborative evidence of itself be sufficient to warrant a conviction of the crime charged. Lumpkin v. State, 68 Ala. 56.

■ Whether or not there is sufficient corroborative evidence of the accomplice's testimony to take the case to the jury is a question of law which is addressed to the decision of the court. Its probative force, credibility, and sufficiency are matters for the jury to decide.

■ When the court allows the introduction of the corroborative evidence, the jury must take this, together with the testimony of the accomplice, and upon this factual basis and consideration determine the guilt or innocence of the accused. Sorrell v. State, supra; Smith v. State, supra; Cobb v. State, 20 Ala.App. 3, 100 So. 463.

■ A liberal construction is accorded the terms and provisions of the statute in question. Horn v. State, 15 Ala.App. 213, 72 So. 768.

■ We hold that in the case at bar the demands and requirements of the applicable doctrines were met and that the defendant was not due the general affirmative charge.

The evidence we have herein delineated contains its own illustrative significance and purport. We will not attempt to collate the proof to the legal principles which must be applied.

It rarely occurs that the facts in any two cases are in every respect the same. However, the following authorities are based on facts and circumstances that bear some analogy to the instant case. At least the logical deductions which may be gleaned from the opinions bear convincing proof that our views in the instant case are sound. Smith v. State, supra; Horn v. State, su-

pra; Hodge v. State, supra; De Graaf v. State, Ala.App., 37 So.2d 130; [1] Malachi v. State, 89 Ala. 134, 8 So. 104; Cheatwood v. State, 22 Ala.App. 165, 113 So. 482; Cobb v. State, supra.

We freely confess that our task has not been altogether easy in our effort to determine whether or not the lower court was in error in denying the motion for a new trial. We refer to the ground that the verdict was contrary to the evidence.

It is difficult to bring ourselves to the point of believing that the appellant would have committed the crime with which he is charged. We base this primarily upon the fact that he had been employed by the United States Government as a rural mail carrier for about thirteen years and from aught appearing had held this position in a trustworthy manner. It appears that he and his wife lived in comfortable circumstances and there were no pressing financial needs. There is no evidence of his general good character, nor did the State attempt to show that it was bad for truth and veracity.

We are impressed, also, that a person should not be convicted of high crime on the testimony of confessed criminals. This is the sentiment and caution that illustrates the wisdom of the law relating to the corroboration of accomplices.

Our official approach to questions for review is appellate only, a fact well known by the legal profession. Our review cannot be based solely on the fact that we find the evidence in conflict. Neither can we pass judgment on its possible truthfulness or falsity.

It was the exclusive prerogative of the jury to weigh and evaluate the credibility of the witnesses. The court cannot lawfully invade this peculiar province.

On appeal the findings of the trial court are presumptively correct, the burden being upon appellant to show error. The reviewing court should not capriciously disregard the finding of the jury and the judgment of the lower court thereon, unless a legal and valid reason therefor is made to appear.

"The verdict of a jury and the judgment of a trial court are solemn things" is an oft-quoted statement, the verity of which is deeply rooted and embedded in the administration of our laws and the ancient right of trial by jury.

What Chief Justice Gardner wrote for the Supreme Court in Booth v. State, 247 Ala. 600, 25 So.2d 427, 432, is in every respect applicable here: "Among the grounds of motion for a new trial was the one that the verdict was contrary to the great preponderance of the evidence. The motion was denied. The solution of the questions of fact presented in this case was one not free from difficulty, but was one peculiarly for the jury's determination. The trial appears to have been conducted with great care. The defendant was vigorously represented by able counsel who was alert to his every interest, and the trial judge likewise appeared to have conducted the trial in such a manner as to safeguard defendant's every right. Under the rule by which we are here guided, there is no justification for a disturbance of the trial court's action in denying the motion for a new trial based upon this ground." See also Great A. & P. Tea Co. v. Meeks, 34 Ala.App. 241, 38 So.2d 891, and authorities cited therein.

We have read and considered this record en banc, and we are forced to the conclusion that we should not disturb the action of the lower court in the matter of instant concern.

There are no other presented questions which call for any discussion.

The judgment of the court below is ordered affirmed.

Affirmed.

BRICKEN, P. J., not sitting.

1. 34 Ala.App. 137.