98 So.2d 56

**Raymond LADD**

**v.**

**STATE.**

**8 Div. 5.**

Court of Appeals of Alabama.

June 18, 1957.

Rehearing Denied Aug. 13, 1957.

Andy Hamlet, Jr., Scottsboro, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

CATES, Judge.

Raymond Ladd was indicted at the 1955 Spring Term of the Jackson Circuit Court for grand larceny of 1,000 pounds of lespedeza-sericea seed of the value of $250, the personal property of Walter L. Johnson. His first trial resulted in a hung jury. The second trial on March 26, 1956, resulted in a verdict of guilty of grand larceny, and a judgment of guilt and a sentence of imprisonment for two years. A motion for a new trial filed within the time allowed by law was overruled.

The evidence for the State was that Robert Haas, sometime in the Fall of 1953, sold his father-in-law, Walter Johnson 1,000 pounds of lespedeza-sericea seed

which had been cleaned and scarified by Cedric Brewer, who had, after that operation, placed them in tow sacks bearing the initials "B. H." Haas sometimes was also known as Bob or Bobby Haas. Two of these sacks (one containing seed) were introduced in evidence, and Haas recognized them as being sacks in which the seed were placed by Brewer. He also identified them as the sacks that he found about February 13, 1954, in Raymond Ladd's barn loft when, in the company of the sheriff of DeKalb County, a search was made of Ladd's premises. Johnson testified as to the purchase of the seed and their value. He went on to say that the seed had been stored on his farm in a seed house, the door of which had been fastened with a padlock. Sometime "in the early fall or late summer of 1953" Johnson's seed house had been broken into. The staple which held the padlock had been sawed off. G. H. Noles, formerly sheriff of DeKalb County, corroborated the testimony of Messrs. Haas and Johnson as to the search of Ladd's premises. Claude Frank Mitchell, put on the stand by the State, testified that in the Fall of 1953 he had been working for Ladd. One night he went on a trip in Ladd's pick-up truck from Mitchell's father's house near Henegar in DeKalb County to a place near Hollywood in Jackson County, which he later learned to be the farm of Walter Johnson. Ladd told Mitchell that he was going to Hollywood to deliver a load of whiskey. Mitchell drove Ladd's truck over from DeKalb County. When they got to a drive-in theatre between Scottsboro and Hollywood on Highway 72, Ladd deposited Mitchell on the roadside while he went off in a northerly direction and returned in about half an hour. On Ladd's return, they drove off again and met another car. Ladd got out and talked to two men and two women. Mitchell stayed in the truck. After five minutes the other car turned around and Ladd came back to the truck. The two vehicles drove off through the edge of Hollywood in the direction of Carnes, Alabama. They went up a side road until they came to a store and then turned around

and stopped at a barn or building with a tin roof on it. This appears to have been Johnson's seed house. Mitchell got out of the truck up on the road about 100 yards from the seed house, while Ladd, having turned off the lights on the truck, went to the building with the two men from the other car. When the truck came back from the seed house, there was something in the truck bed covered with a tarpaulin. On the way back a stop was made near a cemetery to pump up a tire, and at that time Mitchell noticed that there were sacks in the back of the truck under the tarpaulin. The pair then proceeded on back down the highway and across the Tennessee river. Ladd dropped Mitchell off at the house of the latter's father back in DeKalb County about midnight.

Cedric Brewer testified in behalf of the State that he had cleaned and scarified the seed for Haas and had marked "B. H." on the sacks in which he placed the seed. He could not positively state that the sacks in evidence were the ones in which he put the seed, but he was able to say that the sacks exhibited were "just like the ones I put 'B. H.' on."

When Haas, Johnson, and Sheriff Noles went to Ladd's house in February, 1954, they did not find him. Ladd's barn was about 100 yards behind the house. The searching party found the barn locked, but Hass "got in one of the stalls and got up in the loft and let" the others in. They all went up in the loft and found one sack with seed in it and several empty sacks with "B. H." on them.

Upon the State resting its case, the defendant moved that (1) the evidence be excluded and (2) the defendant be discharged.

The defendant did not take the stand. He brought in evidence, the tendency of which was to show that Mitchell was the thief and not he, and furthermore that Mitchell's reputation for truth and veracity was such that he should not have been entitled to have been believed in a court of justice. Ladd also adduced testimony that about the

time of Johnson's loss Mitchell had sold similar seed to at least two farmers on Sand Mountain.

The following charges were refused the defendant:

"The Court charges the Jury that under the evidence in this case you must acquit the defendant."

"The Court charges the Jury if you believe the evidence in this case you cannot convict the defendant."

"The Court charges the Jury if you are reasonably satisfied from the evidence Claude Frank Mitchell has wilfully testified falsely as to any material facts in this case you would be authorized to disregard his testimony in its entirety."

"The Court charges the Jury if you are reasonably satisfied from the evidence in this case that the witness Claude Frank Mitchell has wilfully testified falsely as to any material facts in this case, you would be authorized to disregard his testimony in its entirety, and should you disregard the testimony of witness Claude Frank Mitchell, you should acquit the defendant."

We consider the two latter charges were covered by the oral charge which read pertinently as follows:

"You have a further right—if you believe any witness willfully testified falsely as to any material facts in the case, then you have a right to disregard his entire testimony. That don't mean that you have to. That means that you have a right to do it. That is another way of telling you that you are the sole judges of the testimony."

See Code 1940, Title 7, § 273.

We consider that the principal question on appeal here revolves around whether or not Claude Frank Mitchell was an accomplice of Ladd's; and, if so, whether there was sufficient independent evidence to corroborate his testimony. Code 1940, Title 15, § 307, reads:

"§ 307, Testimony of accomplices; must be corroborated to authorize conviction of felony.—A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

■ The prosecution's evidence has made Mitchell, as a *matter of law* (i. e., for the purposes of requiring corroboration under § 307, supra), an accomplice. He admittedly was driving the truck at the outset of the whiskey running expedition, and, under familiar principles, being a participant in an illegal venture for one purpose, he becomes one for all, i. e., we look at him as a derivative accomplice so far as requiring corroborative evidence before we can say there is a prima facie case.

■ No discernible common pattern arises from the decisions on the sufficiency of the evidence to corroborate an accomplice's testimony. Evidence which logically and rationally is as consistent with innocence as with guilt does not corroborate. Sorrell v. State, 249 Ala. 292, 31 So.2d 82.

■ However, from the discovery of the sacks in Ladd's barn—some with seed in them—the jury could have inferred a sufficient corroboration of Mitchell's testimony. When evidence "tending to connect" the defendant with the commission of the offense is offered, its sufficiency is for the jury, Horn v. State, 15 Ala.App. 213, 72 So. 768. In Smothers v. State, Ala.App., 83 So.2d 374,[1] testimony of Smothers' going along a dead end trail toward where a still was found was corroborative enough to satisfy the statute. That the defendant was present with his coindictee when stolen hogs were sold, was held sufficiently corroborative of the accomplice's testimony of

the theft, Dukes v. State, 33 Ala.App. 474, 34 So.2d 707. See also Fagan v. State, 35 Ala.App. 13, 44 So.2d 634. The constructive possession of the seed logically called for the defendant to offer an explanation as to how they came into his hands, Vinet v. State, Ala.App., 83 So.2d 357.[2] The fact that the barn was locked could be considered to bolster the implication of the defendant's possession. Thus, in Lawson v. State, 38 Ala.App. 322, 82 So.2d 812, 813, this court, per Harwood, P. J., said:

> "Possession is not limited to actual manual control upon or about the person. If under one's power and dominion the thing is possessed. * *"

A farmer's barn is a part of his working establishment, and it is only reasonable for the jury to consider, without mere speculation, the use of it by the defendant in the light of the use to which a reasonable man similarly situated would put his barn.

That Haas, who was a small man, was able to enter the barn in spite of the lock, was not enough to negative Ladd's possession of his own barn; the quality and extent of this possession, on this record, present a jury question, English v. State, 38 Ala.App. 377, 84 So.2d 673.

Having searched the record without discerning error in the trial below, we consider the judgment below is due to be

Affirmed.