138 So.2d 56

**Sam Dean FREEMAN**

v.

**STATE.**

**7 Div. 659.**

Court of Appeals of Alabama.

Dec. 12, 1961.

Rehearing Denied Feb. 13, 1962.

John T. Nixon, Anniston, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

Sammy Douglas and Birsey Dee Brooks testified at the trial and both admitted their participation in the commission of the crime. Douglas testified as a witness for the state. Brooks testified for the defendant.

Sammy Douglas stated that shortly before midnight March 6, 1960, he, Sweet Jones and defendant arrived in Calhoun County from Birmingham. They went to the house of Birsey Brooks where they sat around talking for awhile. Two drug stores were burglarized that night, but defendant remained at the Brooks house when the first burglary was committed. About two or three o'clock in the morning the four men left the house in a car and inspected the Service Drug Store in Oxford; that the other three men, including defendant, asked Douglas if he could open the store's door and received an affirmative reply; that about 6 or 6:30 A.M. they returned to the drug store and witness pried open the door with a crowbar and he and Jones entered the store and opened the safe; that they got $1200 or $1300, a foreign made gun and some narcotics, and left by the back door; that Brooks and defendant who had been serving as look-outs in the car parked in front of the pharmacy, came around and picked up witness and Jones and they returned to Brooks' house where the money was divided four ways and the narcotics were given to defendant; that afterwards all except Brooks left and returned to Birmingham; that shortly thereafter Douglas, Jones and defendant went to Caffey Junction and from there they proceeded to Meridian, Mississippi, for the purpose of committing additional burglaries; that they returned to Caffey Junction where witness was arrested on March 10, 1960; that prior to his going to sleep in the car at Caffey Junction Jones and defendant were in the car with him; that none of witness' clothes were in defendant's suitcase; that Sweet Jones was killed in an attempt to escape; that prior to the burglary he bought a car from defendant, paying $450 in cash for it.

State Investigator Ben Allen testified as a witness for the state that on March 10,

PRICE, Judge.

This appeal is prosecuted from a conviction of grand larceny in the Circuit Court of Calhoun County.

The Service Drug Company at Oxford, Alabama, was broken into in the early hours of March 7, 1960. Approximately $1200 in money, a Belgian pistol worth $45.00 and narcotics valued at $39.00, were taken therefrom.

1960, at Caffey Junction, situated between Bessemer and Tuscaloosa, he arrested Sammy Douglas who at the time was lying asleep on the back seat of a Ford automobile parked beside a grocery store; that in the Ford he found burglary tools, three suitcases, three pistols, three bottles of narcotics and some hypodermic needles; that in the trunk of the Ford he found a suitcase containing clothing, a divorce decree terminating the marriage of Mrs. Sara Thompson Freeman and defendant, a Social Security card bearing defendant's name, a picture of a small boy with the name Freeman on it, an envelope addressed to defendant in care of the Police Department of Talladega, Alabama, an insurance receipt made out to defendant, a bottle (previously identified as having been taken from the drug store on the night in question containing Dilaudid, a narcotic) a .38 caliber pistol and a letter recommending defendant for a job; that about June 1, 1960, when witness talked to defendant at the Calhoun County jail defendant stated that at Caffey Junction when the witness went around the building to the restroom he missed defendant, who went out the front door, crossed the street and caught a ride to Birmingham.

Oxford Police Chief C. R. Hodges, a witness for the state, testified that each time he talked to him Sammy Douglas had said defendant was present at the time of the burglary; that at one time Birsey Dee Brooks had said defendant was waiting at Brooks' home and was not present.

Mrs. Birsey Dee Brooks, witness for the state, testified that she had not seen defendant at her house on the night of March 6, 1960; that on March 7, 1960, at 6:00 A.M. when she prepared to cook breakfast she saw him at the kitchen table drinking coffee with her husband's father; that a few minutes after 6:00 A.M., Sweet Jones, Sammy Douglas and her husband entered the house and they, together with defendant, went upstairs; that within thirty minutes defendant, Jones and Douglas left the house.

Calhoun County Deputy Sheriff Robert Higgins, a witness for the state, testified that on May 16, 1960, he picked up defendant at the jail in Los Angeles, California, where he was in custody, and returned him to Alabama; that during the trip defendant denied breaking into the Service Drug Company, saying he was at the Brooks house at the time of the burglary.

For the defendant Birsey Brooks, an inmate of Kilby Prison, testified that between 7:00 and 8:00 P.M., March 6, 1960, he and defendant drove around Anniston looking for liquor and a place to sell it, after which he was driven home by defendant and went to bed; that around 12:00 defendant awakened him and said there were two men outside who wanted to see Brooks; that upon being told by defendant the men were all right, he instructed defendant to invite Douglas and Jones into the house; that when Douglas and Jones mentioned committing some burglaries that night defendant refused to accompany them because he was wanted by the Oxford police; that the witness and defendant fixed and gave themselves shots of dope; that he went out and helped Douglas "knock off" two drug stores; that he drove the car while Douglas committed the burglaries; that defendant was not with them during the burglaries. The witness admitted giving to Chief of Police Hodges a signed statement. He was asked if in the statement he said that defendant told him he had a couple of "jobs" in Oxford and asked the witness to drive the car for Jones and Douglas, and when the witness insisted no guns be taken defendant said two drug stores were to be "knocked off" and guns might be needed. The witness stated he made a statement but didn't know whether it was exactly as read; that witness gave a signed statement to Officer Hodges wherein he stated that Sam Freeman divided the money taken from the Service Drug Company into four piles of about $200 each, but that he didn't read the statement and the name used should have been Sammy Douglas, not Sam Freeman; that he signed the statement because of threats made by the police against his wife and children and

that he was "shook up" at the time; that he did give the police a statement in which he said the tools and medicine found in his house on March 19, 1960, were the ones left there by defendant on March 7; that he did not remember stating to the police that "Sam Freeman took no active part in the robbery. Although he planned the job and received an equal amount of the money taken and all the narcotics;" that following the robbery of the first drug store the men laid about $30.00 on the table and he might have said Sammy Douglas used poor judgment in selecting the place but he didn't remember saying Sam Freeman was a poor judge of a place to rob.

Defendant testified that on March 6, 1960, he, Sammy Douglas and Sweet Jones came to Anniston with bootleg whiskey; that from 11:00 or 12:00 P.M. until the next day he stayed at the house of Birsey Brooks; that while he was at the Brooks house Douglas, Brooks and Jones left the house; that he was asleep when they returned and they said nothing to him about breaking into a drug store; that night Douglas gave him $200 and $35 in Narcotics in payment of an automobile defendant sold to him on March 4th; that defendant left Anniston about 7:00 or 8:00 A.M., March 7, 1960, went to Birmingham, and then to Meridian with Douglas and Jones; that when they got back to Tuscaloosa defendant left the others, but left his suitcase, in which he and Douglas had clothes, in Douglas' car; that he went to Atlanta and, after seeing a newspaper article connecting him with the burglary, left for California where he was arrested and returned to Alabama; that he had no connection with the Oxford burglary; that he lived in Oxford but had been helping Sammy Douglas make white whiskey in Tuscaloosa and they brought the whiskey to Anniston that night; that he went to Brooks' house in the middle of the night, awakened Brooks and introduced him to Douglas and Jones; that Douglas got the money he paid him on the automobile that night from the sale of the white whiskey; that he did not tell Ben Allen that he missed him at Caffey Junction;

that before going to California he went first to Illinois; that the suitcase brought into court was the one he left in Douglas' automobile and that he did not deny that the Social Security Card, the divorce decree and other items belonged to him.

Police Chief C. R. Hodges, recalled as a rebuttal witness for the state, testified that on March 21, 1960, Birsey Dee Brooks gave him a signed but unsworn statement, which read in part: "He (Sam Freeman) told me he had a couple of jobs in Oxford, and asked me if I would drive the car for Sweet and Sammy Douglas * * * Sweet took less than $30 in bills and laid them on the table, plus a handful of change, and told Sam Freeman that he was a poor judge about a place to rob * * *. When we got to my house they went straight upstairs, while I went to the kitchen, and just a little later Sam Freeman called me to come upstairs * * * Sam Freeman took no active part in the robbery, although he planned the job and received an equal amount of the money taken, and all narcotics."

It is argued upon this appeal that defendant was convicted on the uncorroborated testimony of Sammy Douglas, who was an admitted accomplice, and that the court erred in denying the defendant's motion to exclude the state's evidence, and in refusing to him the general affirmative charge requested in writing.

Our courts have given the statute in question a liberal construction, Title 15, Sec. 307, Code of 1940. Fagan v. State, 35 Ala.App. 13, 44 So.2d 634.

■ Whether there is sufficient corroborative evidence to go to the jury is a question for the court, but whether the evidence is sufficiently corroborated to warrant a conviction is a question for the jury to determine. Fagan v. State, supra; Smothers v. State, 38 Ala.App. 153, 83 So.2d 374.

No rule has been laid down as to the precise amount of evidence required to sus-

tain an accomplice's testimony, but the general rule is stated in Smith v. State, 230 Ala. 413, 161 So. 538, 542 as follows:

"It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the issue of guilt or innocence to the jury."

Evidence of flight may be considered as corroborative of the testimony of an accomplice. Prophett v. State, 25 Ala.App. 20, 141 So. 257, Pierson v. State, 39 Ala.App. 346, 100 So.2d 47.

The testimony as to defendant's flight after the crime was committed together with proof of possession of a part of the narcotics stolen from the drug store was sufficient corroboration of the accomplice's testimony to justify the court's denial of the motion to exclude the state's evidence and the refusal of the affirmative charge.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.