191 So.2d 224

Oates Lamar **COOPER.**

v.

**STATE.**

**3 Div. 215.**

Court of Appeals of Alabama.

Aug. 16, 1966.

Rehearing Denied Sept. 20, 1966.

I. Edwin Moore, Montgomery, for appellant.

Richmond M. Flowers, Asst. Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted June 23, 1966. Cooper was convicted on an indictment charging him with the grand larceny of an automobile, the personal property of Jack Hendricks alleged to be worth $3,000. After verdict the trial court sentenced him to six years in the penitentiary.

On the night of May 19, 1964, Mr. Hendricks parked his car near the First Baptist Church in Montgomery, Alabama, leaving the key in the ignition lock. About nine o'clock he came out of the church to discover his car was missing.

The State's evidence is based upon the testimony of Cooper's brother, Gary I. Cooper. As we view his evidence, the brother can only be considered an accomplice.

Accordingly, in reviewing the facts, we lay aside his testimony to point out that the first neutral witness to account for the automobile was a State Trooper, P. C. Stacks. This officer was on a road outside Eufaula in Barbour County early on the morning of May 20 checking drivers' licenses.

A two-door Ford car came by him at a high rate of speed and he gave chase, sometimes reaching a hundred miles an hour. He finally stopped the car which was driven by the appellant's brother, Gary. Mr. Stacks turned the investigation of the car over to a Mr. Gatlin of the State Department of Public Safety.

In the trunk Mr. Gatlin discovered a number of tools belonging to Mr. W. T. Boyette, who operated a filling station and garage at which the defendant had previously worked. Mr. Boyette stated that the brother, Gary, had also come by his place of business on several occasions so that we conclude from a reading of the entire testimony that the brother, Gary, had equal access to the working area of Mr. Boyette's garage.

The brother's testimony was that on the day in question he had been staying in a boarding house sharing a room with the appellant. On the afternoon in question he had gone to a picture show and then to a pool parlor.

About 8:00 or 8:30 his brother appeared with the car in question telling him that he had borrowed it from a girl so that he could go back to the home place in Barbour County. The two of them proceeded to Barbour County that night.

On the way Gary admitted that he had helped the appellant take the Alabama tag off and put a Georgia tag on.[1] Furthermore, somewhere en route the appellant turned the car over to him to drive, and that during this journey the appellant had told him that he had borrowed the car "permanently."

The brother, Gary Cooper, admitted that he was driving the car the following day. At the close of the State's evidence, the defendant made a motion to exclude it.

Code 1940, T. 15, § 307, provides:

"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

■ In the case of Sorrell v. State, 249 Ala. 292, 31 So.2d 82, the court, per Mr. Justice Simpson, quoted this statute and stated as follows:

" * * * The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must

do more than raise a suspicion of guilt. * * *

"We think the following test soundly states the principle and is particularly applicable to the case at bar: ' * * * the proper test in determining whether there was sufficient corroboration of the testimony of an accomplice, according to statutory requirements, is first to *eliminate the evidence of the accomplice* and then, if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' 2 Wharton, Criminal Evidence § 752, 11th Ed." (Italics added.)

Cf. Lumpkin v. State, 68 Ala. 56.

The latter quoted rule has been consistently cited both directly by quotation and by reference so as to have become a fixed rule of interpretation of § 307, supra.

■ This court, in matters of State law, is governed statutorily by the decisions of the Supreme Court of Alabama. Code 1940, T. 13, § 95.

Taking this rule and admeasuring the evidence of instant concern, we find no evidence independent of Gary Cooper's which unequivocally points to the guilt of the appellant.

The brother, Gary Cooper, is found in possession of the car, a fact which, had a jury convicted him, would have alone been sufficient to support an inference of his

---

[1.] "Q Now, on the way down there, did he or did he not change his story about having borrowed the car?
"A Yes, sir.
"Q What did he tell you in regard to it?
"A That it was borrowed permanently.
"Q It was borrowed permanently.
"A Yes, sir.
"Q I know this is very hard on you, Mr. Cooper, to testify about your brother but we do have to have the truth of it here. Now, when you got to Barbour County, did he or did you change the tags on the car?
"A Yes, sir.
"Q Who took the tags off?
"A I took a tag off. He replaced it. I wouldn't say which automobile but I took the tag off.
"Q What kind of a tag did you put on it?
"A A Georgia tag.
"Q A Georgia tag?
"A Yes, sir.
"Q Did you use that car while you were down there at Eufaula?
"A Yes, sir."

guilt. Travis v. State, 32 Ala.App. 637, 29 So.2d 359. His explanation cannot make him altogether innocent, since (a) he helped change the tag on the car, and (b) even if, theretofore, he had not been told, according to his own story, that the brother had stolen the car, certainly on the following morning when he alone was caught driving it, he had been told the night before that the car had been borrowed "permanently."

We reject any argument that the brother, Gary, was only an accomplice in the sense that he was a mere accessory after the fact.

■ Accomplice denotes one who is particeps criminis, a partner in crime. Davidson v. State, 33 Ala. 350. Undoubtedly, it embraces principals and accessories before the fact. Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712, seems to be the latest case in which the Supreme Court has defined "accomplice."

Neither accessories before nor after the fact are among those present at the locus criminis.

■ "Accessory before the fact" we find in Griffith v. State, 90 Ala. 583, 8 So. 812, thus:

"* * * one who counsels, commands, or procures another to commit a crime, not being himself actively or constructively present at the time of its commission. * * *"

"Accessory after the fact" is by statute one who, with knowledge that a felony has been committed and not being parent, child, brother, sister, or spouse of the felon, conceals, or gives any other aid to him so as to enable him to avoid or escape from arrest, trial, conviction or punishment. Code 1940, T. 14, § 15.[2]

That § 307, supra, uses "accomplice" as including an "accessory after the fact" is doubtful. Belser v. State, 16 Ala.App. 604, 79 So. 265.

■ "The various definitions of the term convey the idea that an 'accomplice' is one who is concerned with others in the commission of a crime, and the usual test of whether one is an accomplice of an accused on trial is whether he could be prosecuted and punished for the crime with which the accused is charged." 23 C.J.S. Criminal Law § 786(1).

■■ Merely the fact of an indictment having been laid against the witness does not alone brand him as an accomplice of a defendant. Welch v. State, 35 Ala.App. 643, 51 So.2d 905. However, if the State's case rests on an imputation of coeval guilt on the part of the prosecution's witness, then as a matter of law corroboration is vital to convict a defendant.

As we view the theory of the State's evidence, it would seem to be that the crime of larceny was committed and completed when a thief drove away Mr. Hendricks's automobile from the neighborhood of the First Baptist Church in Montgomery. If the brother, Gary Cooper, had any complicity arising out of changing the automobile tags and taking over the operation of the vehicle, this, the State seems to contend, was an independent act separated in time and place from the original asportation.

Hence, at most, this would make Gary only guilty of being a receiver of stolen goods when he came into the knowledge that the car had been borrowed "permanently."

However, it is also a legitimate inference that his being seen in possession thereof by the Highway Patrolman would alone and unexplained have been sufficient to have supported a larceny conviction against him.

That the crimes of larceny and receiving stolen goods sometimes have a tendency to overlap in time and place is well illustrated

---

**2.** This section makes giving such aid a misdemeanor. The exception for near relatives is of statutory origin. iv Bl. Comm. 38-39.

not only by this case but also in Morris v. State, 17 Ala.App. 126, 82 So. 574, wherein Judge Samford commented:

"  *  *  * Besides, the crime of 'larceny' is the felonious taking and carrying away of chattels, and every person who, with a guilty knowledge, aids, and abets in the taking and carrying away, is guilty of the larceny and of every crime committed in the furtherance of the common purpose. That is to say, if this defendant received these goods under such circumstances as to make him guilty of receiving stolen property, then Benjamin, Upshaw, and Burch were all equally guilty with him, although they could have been indicted and convicted of the larceny instead of the crime charged against the defendant, and, if Burch had knowledge that the goods were stolen at the time he says he delivered them to defendant, the defendant could not have received them under such circumstances as to be guilty of the crime of which he is charged without Burch being an accomplice."

▇ Furthermore, since the car had not come to its designed resting place or point of concealment, the brother, Gary, joined, albeit as a Johnny Come Lately, in a conspiracy to effectuate its theft.

If this aspect of the evidence would permit of a legitimate inference, then the brother, Gary, was, at common law, more than an accessory, either at the fact or after the fact.

▇ In other phases of the rules of evidence, it is permissible to allow the statements of one co-conspirator to be received against another until the common purpose of the joint criminal adventure has been accomplished. The law in such cases reasons that the design continues until the division of the spoils. We see no reason why this notion would not be analogous in a determination of who is and who is

not an accomplice within the meaning of § 307, supra.

Summarizing, while there is some surface confusion [3] as to the rationale of Dye v. State, 25 Ala.App. 138, 142 So. 111, contrasted with that of Jones v. State, 23 Ala. App. 395, 126 So. 178, and Motes v. State, 20 Ala.App. 195, 101 So. 286, yet we believe reference to the rule of *Doss*, supra, as to the definition of an accomplice harmonizes the rulings.

We quote from *Doss*, supra, per Brown, J.:

"The test of whether a witness is an accomplice, within the meaning of section * * * is determined by the fact as to whether or not he could have been indicted and convicted of the offense charged, either as principal or accessory, and this depending upon the circumstances of the particular case may be a question of law for the court, or of fact for the jury. * * *" Citing cases.

In *Dye*, supra, whether the receiver was privy to the burglary, lay only in inference. Therefore, the receiver's complicity was a question of fact, not law.

*Jones* (a conviction of larceny) was like the present case in that a receiver testifying against his connecting thief must be corroborated.

In *Motes*, supra, Mrs. Blankinship was present when the conspiracy was launched. Also, she helped divide (and claimed part of) the spoils. Motes was convicted under a general verdict on a three-count burglary, larceny and receiving indictment. Hence, Mrs. Blankinship participated in probably all three phases of the same criminal transaction.

Ladd v. State, 39 Ala.App. 172, 98 So.2d 56:

"The prosecution's evidence has made Mitchell, as a matter of law (i. e., for the

---

3. McElroy, Evidence (2d ed.), § 300.01(6), and Anno. 53 A.L.R.2d 317.

purposes of requiring corroboration under § 307, supra), an accomplice. He admittedly was driving the truck at the outset of the whiskey running expedition, and, under familiar principles, being a participant in an illegal venture for one purpose, he becomes one for all, i. e., we look at him as a derivative accomplice so far as requiring corroborative evidence before we can say there is a prima facie case."

Concluding, we note that no proof of value of Mr. Hendricks's car was adduced by the prosecution. In statutorily unenumerated personal property, between grand and petty larceny the dividing line is—by legislative command unchanged since 1875—a market value of $25.00.[4] In the absence of such proof, the verdict does not respond to the indictment. The court below erred in receiving a vague verdict.

For these errors the judgment is reversed and the cause remanded for trial de novo.

Reversed and remanded.

---

4. Code 1940, T. 14, §§ 331 and 334. Cf. Act No. 180, approved February 20, 1875 (Acts 1874–75, p. 259).