HARRIS, Judge.
Appellant was convicted of burglary in the first degree and the jury fixed his punishment at ten years imprisonment in the penitentiary. Throughout the trial proceedings in the Circuit Court of Lauderdale County appellant was represented by Court-appointed counsel. Appellant is in this Court with a free transcript and trial counsel represents him on this appeal.
The sufficiency of the evidence is presented by a motion to exclude the State’s evidence on the ground that the State’s entire case rested on the uncorroborated testimony of an accomplice. Appellant also made a motion for a new trial raising the same point. Both motions were overruled and denied.
Mrs. Juanita M. Hargett testified that on Monday, February 2, 1976, she was alone in her home at 3275 Old Chisholm Road, Florence, Alabama. That at about 1:30 a. m. she was reading in bed and heard her telephone ring two or three times but she did not get out of bed and answer the telephone. She stated that about ten minutes later her dog, who roamed the yard inside a six-foot high chain link fence, started barking under her bedroom window. She then heard something hit the windows in her basement and heard two men talking. She dialed the operator and asked her to call the police station. While she was talking to the police dispatcher she heard the people who had entered her basement come up the stairway and stop just outside her bedroom door and they were still talking as they approached her bedroom. At this time she started talking louder on the telephone and she heard the men leaving her house. When the officers arrived she went to the basement with them and observed a number of window panes had been broken out of her basement windows and a door which had been closed when she went to bed was standing open. She did not see the men who broke into her house and she did not miss any property after the two men departed in an automobile.
Police Officer Britt Hendon of the Florence Police Department testified that he was working the 11:30 p. m. to 7:30 a. m. shift on February 2, 1976, and was in his patrol car when he received a call from the dispatcher relative to a burglary at the Hargett home. He immediately proceeded toward the Hargett home when he saw a 1969 beige over gold Electra Buick car coming out of the south exit of Old Chisholm Road. He stated that he and his partner, Officer Womble, pursued the Buick. He turned on the blue light and siren and the Buick speeded up. He radioed another po *463 lice unit that they were in “hot pursuit” of the Buick which had just come out of Old Chisholm Road where the break-in occurred. The officers stopped the Buick a few blocks from where Mrs. Hargett lived. He further testified that appellant was in the passenger side of the Buick and Ellie F. Martin III was the driver. Officer Hendon stated that appellant was arrested, handcuffed and put in the patrol car and that he was not intoxicated at the time of the arrest. He said that Martin had masking tape around his fingers but no tape was on appellant’s fingers. He stated that he knew both appellant and Martin and they were searched for weapons before they were put in the patrol car. Martin had a .38 caliber pistol on his person but appellant was not armed. Both men were given the Miranda rights and warnings at the time they were arrested.
Ellie F. Martin III, the co-indictee, testified that he had known appellant four or five years and he also knew Mrs. Hargett. That he had worked on Mrs. Hargett’s roof several months before the burglary and had seen guns, a television set and other valuable articles. He further stated that he was with appellant on February 2,1976, and had been with him several days prior to that date. He said that at that time he had a drug habit and so did appellant. He told appellant about the things he had seen in the Hargett house and that it was a good place to break into. That he and appellant drove by the Hargett house a couple of times to see if anyone was at home and he also called her a couple of times. The telephone calls were not answered and they thought no one was at home and he and appellant drove to the Hargett house in a 1969 Buick Electra that belonged to Martin’s father. They parked the Buick on a dirt road in the woods across from the house. Then they went across the road and climbed over the fence surrounding the Hargett house. They were confronted by a dog inside the Hargett fence but the dog went around behind the house and Martin broke the window panes with a two-by-four piece of wood he picked up and he and appellant entered the basement and went upstairs. They heard someone talking on the telephone and they went back down the stairs, opened the basement door, and left. Martin further stated that as they were driving away they noticed a police car following them and they tried to outrun the police car but pulled over and stopped when the police got right upon them.
Martin stated that when the officers searched him they found and took a .38 automatic pistol from him. He said when he was arrested he had masking tape on his hands and he thought appellant was wearing gloves when they entered the Hargett house.
Martin further testified that for two or three days before the burglary, he, appellant and appellant’s brother had been taking narcotics via needles and drinking alcoholic beverages and at times they were in very bad shape. He stated that at the time of the Hargett burglary he had another burglary charge pending against him in Colbert County which was set for trial the morning after the Hargett burglary. That prior to his testimony against appellant he pleaded guilty to the Hargett burglary and received a ten-year sentence. He claimed he had an understanding with the District Attorney that in exchange for his testimony against appellant he was to receive a ten-year sentence and that this sentence was to run concurrently with whatever sentence he got in the Colbert County case. He went to trial on the Colbert County case and the jury fixed his punishment at 30 years in the penitentiary.
James Womble, a police officer with the Florence Police Department, testified that he was on duty in the early morning hours of February 2, 1976. That he and his partner, Britt Hendon, were answering a call about a breakin at the Hargett house. He stated that he saw a Buick come out the south entrance of Old Chisholm Road and turn left on Wright Drive and they pursued this car at high speed and stopped the Buick a few blocks from the scene of the burglary. He stated that he recognized appellant and when he was ordered out of the car he said, “What’s going on, what’s going on.” *464 He said appellant was not intoxicated at that time. That he put handcuffs on appellant and told him he was under arrest for first degree burglary and appellant walked unassisted to the patrol car. He did not smell alcohol on appellant, that his speech was not slurred; he walked straight and did not stumble at all. He said he read appellant the Miranda rights at the time he was arrested.
The four police officers who took part in the investigation of the Hargett burglary testified they knew both Martin and appellant and their general reputation in the community was bad. One of the officers stated that he would not believe appellant or Martin under oath. The other officers said they did not know whether they would believe these individuals under oath.
Appellant’s brother and his wife testified that for two or three days prior to the burglary of the Hargett house they had been with appellant and Martin and that all of them, except the wife of appellant’s brother, had been consuming large amounts of alcohol, smoking marijuana and injecting barbiturates in their arms. They stated that in their opinion appellant was so under the influence of drugs and alcohol that he could hardly walk and in the condition he was in he could not have climbed over a six-foot chain link fence. Appellant’s brother further testified that Martin tried to get him to go with him and break in the Hargett house but he never actually agreed to do so. He stated that Martin did not want appellant to know about the burglary as Martin did not trust him. He said that he last saw appellant and Martin in the car driven by Martin some time after midnight before the burglary took place and that appellant had passed out. He further testified that appellant’s body system was such that he could be completely intoxicated at 1:30 a. m. and that at 2:15 a. m. he could be walking straight and speaking coherently.
Appellant testified in his behalf and admitted being in the Buick automobile with Martin the morning of the burglary but denied that he climbed over the chain link fence around the Hargett home and denied he entered the house with Martin. Appellant was shown a statement Martin gave the officers which implicated appellant in the burglary and he was asked if that statement was correct. He replied: “What I am saying is incorrect in the statement is this. I do not deny that I was with Elbe Martin. I do not deny that I was in the car. What I am saying is that I never crossed that fence and I never left that car.” He further testified that he knew he and Martin were in a Buick Electra that morning and there was no other person in the car with them. He further stated that at the time the officers stopped them he got out of the car, raised his hands, and walked to the patrol car and knew the police were reading him his rights.
A close question is presented as to whether there was sufficient corroboration of the testimony of the co-indictee to submit this case to the jury. Just because the State’s case is weak and inconclusive does not warrant this Court to disturb the verdict of the jury. In reaching this conclusion we are guided by the pronouncements contained in many adjudicated cases.
In Ross v. State, 74 Ala. 532, the Supreme Court held:
“Corroborative testimony, to meet the requirements of the statute, must tend to connect the defendant with the commission of the offense (Code of 1876, Section 4895); and any legal testimony having this tendency must be admitted. — Lockett v. The State, 63 Ala. 5; Smith v. The State, 59 Ala. 104; Lumpkin v. The State, 68 Ala. 56; Marler v. State, lb. 580. So, proximity and opportunity, when, as in this case, the testimony tends to show the crime was committed at a very unseasonable hour, is a circumstance to be weighed by the jury, in determining the guilt or innocence of the accused. The tendency of each of these species of evidence, as far as they had any tendency at all, was to connect the defendant with the commission of the offense. It was for the jury, and not for the trial court, nor for us, to judge of their sufficiency. The demands of the statute are met, *465 when the corroborative testimony tends to connect the accused with the commission of the offense. Its sufficiency is not a question of law.”
In Moore v. State, 30 Ala.App. 304, 5 So.2d 644, it is said:
“We think and hold that there was sufficient corroborative evidence of the testimony of the accomplice tending to connect the defendant with the offense to warrant submission of the case to the jury. Whether there be such evidence was a question of law to be determined by the trial court, but its probative force and sufficiency, along with the testimony of the accomplice, to establish guilt beyond a reasonable doubt were questions for the jury. Berry v. State, 231 Ala. 437, 439, 165 So. 97.
“The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton’s Criminal Evidence, Section 746.
“And statements made by the defendant, in connection with other testimony, may afford corroboratory proof sufficient to sustain a conviction. 2 Wharton’s Criminal Evidence, Section 750.
“The suspicious conduct of the accused may furnish sufficient corroboration of the testimony of the accomplice. 22 C.J.S., Criminal Law, § 812, subsec. d, (3), p. 1404; Newsum v. State, 10 Ala.App. 124, 129, 65 So. 87; Crumbley v. State, 26 Ala.App. 24, 152 So. 55, certiorari denied 228 Ala. 45, 152 So. 57; Slayton v. State, 234 Ala. 1, 173 So. 642.
“Nor need such corroborative evidence be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. 22 C.J.S., Criminal Law, § 812, subsec. e, p. 1409.
“Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776.
“Under some circumstances proof of proximity and opportunity is held to be sufficient in corroboration of an accomplice. Ross v. State, 74 Ala. 532; Crumbley v. State, 26 Ala.App. 24, 152 So. 55.”
In Miller v. State, 290 Ala. 248, 275 So.2d 675, the Supreme Court said:
“The corroborative evidence need not be strong, nor sufficient of itself to support the conviction. The criterion is that it legitimately tends to connect the accused with the offense.”
In Robinson v. State, 40 Ala.App. 74, 108 So.2d 376, this Court held:
“Further, when an accomplice and an accused are seen together in rather unusual places and times in proximity to the locus of a crime which occurs at an unseasonable hour, the requirements of corroboration are met.” (Emphasis supplied.)
To like effect is the holding in the case of Tidwell v. State, 37 Ala.App. 228, 66 So.2d 845.
In Freeman v. State, 41 Ala.App. 512, 138 So.2d 56, it is said:
“Whether there is sufficient corroborative evidence to go to the jury is a question for the court, but whether the evidence is sufficiently corroborated to warrant a conviction is a question for the jury to determine. Fagan v. State, [35 Ala.App. 13, 44 So.2d 634] supra; Smothers v. State, 38 Ala.App. 153, 83 So.2d 374.
“No rule has been laid down as to the precise amount of evidence required to sustain an accomplice’s testimony, but the general rule is stated in Smith v. State, 230 Ala. 413, 161 So. 538, 542 as follows: ‘It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative cri-minating force of his testimony and tends to connect the defendant with the commission of the offense, it is sufficient to warrant the submission of the issue of guilt or innocence to the jury.’
“Evidence of flight may be considered as corroborative of the testimony of an ac *466 complice. Prophett v. State, 25 Ala.App. 20, 141 So. 257, Pierson v. State, 39 Ala.App. 346, 100 So.2d 47.”
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690.
We have carefully searched the record for errors which injuriously affected the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.