(116 So. 318)

**FLOYD v. STATE.** (4 Div. 335.)

Court of Appeals of Alabama. Jan. 31, 1928.

Rehearing Denied March 6, 1928.

J. C. Fleming and J. N. Ham, both of Elba, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

BRICKEN, P. J. In this case the evidence discloses that Joe Johnson, the alleged injured party, was on Monday night before Christmas, 1925, sitting in a rocking chair at his own home, surrounded by his family and two guests. While thus situated, some one shot him, with a shotgun, through a small window, which was open, and near which he was seated. Johnson was grievously wounded, but finally recovered from the effects of the shot.

At the succeeding term of the circuit court the grand jury indicted this appellant, and charged him with an assault with intent to murder. He was tried upon said indictment, and was convicted as charged, and the court fixed the punishment at imprisonment in the penitentiary for not less than six years nor more than eight years. Sentence was pronounced, and judgment of conviction accordingly entered, from which the defendant appealed. Appellant, as shown by the record, is a white man, and at the time of sentence was 67 years of age.

That the crime was committed was without dispute or conflict. The accused, however, denied that he did the shooting and as a defense set up an alibi, contending, as he did, that he was at his own home, about one-quarter of a mile distant, at the time the gun fired. He admitted he heard the report of the gun. Johnson, the injured party, testified:

"At the time this happened, I had been working for the defendant, hauling lumber for him, and had seen him during the day, and during the day he was at my house, and told me that he was going back home and get his gun and come back and blow my damn brains out."

And on cross-examination he testified:

"At the time the defendant told me that he was going to get his gun, he was at my house, and it was about 12 o'clock on Monday before Christmas, and the same day that I was shot that night. Mr. Floyd [defendant] and I had some trouble that day about 12 o'clock, but I wouldn't say we had a fight."

J. G. Hudson, one of the guests of Johnson at the time of the shooting, was next examined by the state. He testified as to the shooting; also that he "went out to the place from where the gun was fired, and saw one set of tracks of about a 7 or 8 shoe." He stated he traced the tracks, and they came from the direction of the branch, and defendant lived across the branch from where Joe Johnson lived. The tracks went straight back down the hill in the direction of the defendant's home. He also testified:

"I saw the defendant about 1 o'clock in the afternoon, before the shooting occurred that night. He and two other men met the defendant down in the field, and defendant was going up the hill in the direction of Mr. Johnson's house."

He was then asked: "Did he have a gun with him?" Over the objection and exception of defendant, the witness was permitted to testify: "Yes; he had a single-barrel shotgun." Motion to exclude answer was overruled. In these rulings there was no error. In view of the threat already in evidence, the inquiry was relevant. It was also admissible to show preparation upon the part of the accused to put into execution the threat already made, evidence of which is not in dispute in this case.

This witness further testified that defendant said—

"he was going up there with his gun, and I told him that he had better not go, and he just rushed off like he was going anyway, and I said, 'Well, go ahead; I can't keep you from going, if you are going;' and he turned around then and said, 'Night will come and the night-riders will get him, and they would get me if I was there.' "

The defendant moved to exclude the latter statement, and excepted to the overruling said motion. This ruling was without error. The evidence tended to show the inflammatory state of mind of the defendant as against the injured party, the man whom he had just previously threatened. The probative force of the statement was, of course, for the jury.

It is permissible for a witness to testify to the fact, if he knew it as a fact, that a track was a fresh track, or that they had

the appearance of being fresh tracks. The exception reserved in this connection cannot be sustained. No exception, however, is shown by the record to have been taken to the court's ruling in overruling the objection interposed to the question, to wit:

"Mr. Hudson, did the tracks have the appearance of being fresh tracks?"

■■ The general rule for the admission of confessions is properly stated in Carr v. State, 17 Ala. App. 539, 85 So. 852, which case is cited by appellant in support of his insistence that the alleged confession of the defendant to witness Crawley was improperly admitted. The facts attendant upon the alleged confession here, and those stated in the Carr Case, are materially different. Here the evidence shows that the defendant was riding in a buggy with the witness, who gave evidence of the alleged confession. No one was with them in the buggy. The predicate laid was ample and sufficient, when it was shown that no other person was present with witness and defendant at the time the alleged confession was made; and the mere fact that another person, standing by the side of the road as the buggy passed, happened to hear the alleged confession, would not have the effect of rendering inadmissible the alleged confession, on the ground it was not shown to be voluntary so far as this outsider was concerned. So far as the evidence goes, there is nothing to show that the witness W. T. Tucker was in any way connected with the men in the buggy; he was not conversing with them, or in their company, and it does not appear that either of the men in the buggy was aware of his presence by the side of the road while they were passing. As stated, these physical facts and surroundings are materially different from those in the Carr Case, supra. Here it affirmatively appears that the statements made by defendant, at the time indicated, were voluntary, and the court properly so held.

■ Mrs. Bill Floyd, wife of the defendant, testified as a witness in his behalf, and her testimony tended to sustain the alibi set up as a defense in this case. On cross-examination a predicate was laid, in which it was sought to show that at another time and place this witness had made statements conflicting with her testimony given upon the trial. She denied making such contradictory statements, and defendant reserved exception to the ruling of the court in allowing the state to offer testimony to the effect that, at the time and place and under the conditions set forth in the predicate, such statements were made by this witness. These rulings were in conformity with the elementary rules of evidence, and there was no error in the court's rulings.

■ Under the evidence in this case, the affirmative charge for defendant was not in point; it was properly refused.

■ Exception was reserved to the court's ruling in not sustaining the objection of defendant, and in not excluding the remark of the solicitor, in argument, wherein he stated: "There is too much shooting over here in this county." Whatever views the writer may entertain as to the ruling here complained of, this court is precluded from placing the court in error in this connection by the decision of the Supreme Court of this state—which we must follow—in the case of Tyler v. State, 19 Ala. App. 380, 97 So. 573. In Tyler v. State, 19 Ala. App. 383, 97 So. 576, the remarks of the solicitor, complained of, were, to wit:

"We have got too much killing around here." "Don't you know we have?" "Do you know why?"

In above case, the Supreme Court held it was not error for the trial court to permit the remarks of the solicitor to stand. There is marked analogy in the remarks here complained of and those made in the Tyler Case, supra. The motion for new trial is predicated upon the same questions hereinabove discussed and decided. It was properly overruled.

We discover no error in any ruling of the court upon the trial of this case. The record proper is without error. Judgment of conviction in the circuit court, from which this appeal was taken, is affirmed

Affirmed.