214 So.2d 567

James Leroy EMBREY

v.

STATE of Alabama.

3 Div. 327.

Supreme Court of Alabama.

Sept. 26, 1968.

Gatewood A. Walden, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

LAWSON, Justice.

On February 17, 1967, a grand jury of Montgomery County returned an indictment against James Leroy Embrey and Willie Lee Davis for the robbery of J. W. O'Daniel.

Upon his arraignment Embrey pleaded not guilty.

A severance was granted at the request of Embrey and Davis.

Embrey's trial began on Monday, March 6, 1967, and was concluded on the following day. The jury returned a verdict of guilty and fixed Embrey's punishment at life imprisonment. Judgment and sentence were in accord with the jury's verdict. After his motion for new trial was denied, Embrey appealed to this court. He has been furnished a free transcript based on the court's finding that he is a pauper.

Embrey was represented by counsel at arraignment and throughout his trial, including judgment and sentence, and on motion for new trial. He is represented by counsel in this court.

█ The trial venire was qualified in groups of ten. See Burns v. State, 226 Ala. 117, 145 So. 436; Aaron v. State, 273 Ala. 337, 139 So.2d 309. To each group the trial judge propounded the following question: "Do each of you believe in capital punishment?" Presumably this question was propounded under the authority of § 57, Title 30, Code 1940, which gives the State the right to challenge for cause a prospective juror who has a fixed opinion against capital punishment. The District Attorney challenged for cause each of the prospective jurors who answered that question in the negative, which challenges were sustained by the trial court. There was only one objection interposed by counsel for appellant to this procedure. Since Embrey was not sentenced to death, we are not here concerned with the effect of the holding of the Supreme Court of the United States in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776, decided on June 3, 1968.

In *Witherspoon* the Supreme Court of the United States held that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. But in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, also decided on June 3, 1968, the holding in *Witherspoon* was held not to be applicable when the jury recommends a sentence of life imprisonment. For the benefit of the bench and bar we call attention to the fact that the United States Court of Appeals, Fifth Circuit, in Spencer v. Beto, decided on July 18, 1968, applied the holding in *Witherspoon* to a case where a death sentence had been imposed several years prior to the deliverance of the opinion in *Witherspoon*.

Within a short time after the robbery, the defendant was apprehended by the police and carried to the Union Station, where O'Daniel positively identified the defendant as the man who had committed the robbery. C. W. Lansdon, also an employee of the Louisville & Nashville Railroad Company, was present at the time of the robbery and made an in-court identification of Embrey as the robber.

**114**

The State offered testimony to the effect that within a comparatively short time after he was apprehended, Embrey, the defendant below, admitted the robbery.

Embrey testified on his own behalf and did not deny that he robbed O'Daniel. In fact, he in effect admitted that he did commit the robbery but sought to excuse his action on the ground that he was under the influence of alcohol and drugs at the time.

█ . Under the evidence admitted during the course of the trial, a jury question was clearly presented and the trial court did not err in overruling the ground of the motion for new trial which took the point that the verdict was contrary to the evidence. The affirmative charge was not requested by the defendant below.

Detective Terry of the Montgomery Police Department assisted in the investigation of the robbery of O'Daniel and was a witness for the State. After testifying to certain matters not here pertinent, he was asked by the District Attorney if he had had a conversation with the defendant. He answered in the affirmative. Thereupon, the District Attorney suggested to the Court that further questioning of the witness should be conducted outside the presence of the jury. The record contains the following entry: "At this point, Court, counsel and the Defendant retired to Chambers and the following occurred outside the presence of the jury."

In the trial judge's chambers, outside the presence of the jury, the District Attorney questioned the witness Terry regarding his conversation with the defendant. Terry stated that the conversation took place at Police Headquarters and that no one was present when the defendant first made an admission against interest except the witness and the defendant, although Officer Cleveland had been "in and out of the room." Officer Terry said that neither he nor anyone in his presence offered the defendant any reward or hope of reward or made him any promises or threatened or intimidated him in any way; that he told the defendant he did not have to make a statement and that anything he said could be used against him; that he was entitled to a lawyer if he wanted one even if he was not able to employ a lawyer; that the lawyer would be appointed by the Court. Terry futher stated that in his judgment the defendant knew "what he was doing" and "seemed to want to cooperate in trying to get the truth down." Terry further stated that the defendant admitted that he committed the robbery.

On cross-examination, outside the presence of the jury, Terry stated that his conversation with the defendant lasted more than a few minutes; that they had a lengthy conversation. During the course of the conversation the defendant was allowed to go to the bathroom and to smoke. Terry never told the defendant "that things would go better for him if he would go ahead and tell the whole truth about it." At the time of the conversation the investigation "had focused on" the defendant as the suspect. The statement made by the defendant was not under the advise of an attorney.

On redirect examination, outside the presence of the jury, the witness stated that after he told the defendant he was entitled to a lawyer the defendant did not request a lawyer and said that he wanted to go on and talk.

Although the defendant and his lawyer were present at the questioning of Officer Terry outside the presence of the jury, which was, of course, held for the purpose of determining whether the defendant's confession was made voluntarily, neither defendant nor any other witness was presented to contradict any statement made by Officer Terry or to show that the "conversation" was of such long duration, when considered in connection with the defendant's age, character and situation, that he was deprived of his free choice to admit, to deny or to refuse to answer. See Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited.

At the conclusion of the examination of Officer Terry in chambers, counsel for defendant moved the Court "to suppress this evidence because he [the defendant] did not have a lawyer at the time the statement was made." That motion was denied. We construe the record as showing that outside the presence of the jury, the trial court determined that the State had met the burden which was upon it to rebut the presumption that the confession was not made voluntarily and concluded that it was made voluntarily.

■ Certainly there was no violation of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. And we would like to take this occasion to remind the other district attorneys and trial judges of the state that the safer course to pursue in all cases when a confession is to be introduced is to have the trial court pass on the question of the voluntariness of the alleged confession outside the presence of the jury.

■ The trial of this case began after June 13, 1966. Consequently, the holding of the Supreme Court of the United States in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, has application. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882. However, we are of the opinion that no violation of *Miranda* is shown. Here, prior to any questioning, the defendant was warned, in effect, that he had a right to remain silent; that any statement he made could be used as evidence against him; that he had a right to the presence of an attorney. There is nothing in this record even remotely tending to show that the defendant expressed a desire to consult with a lawyer before or after the questioning began or to have a lawyer present at the questioning.

The defendant, a Negro, was twenty-one years of age and a high school graduate. He had an opportunity to refute the statements made by Officer Terry relative to the advice which the latter said he gave to defendant before the questioning began, but he did not do so.

We are of the opinion that the trial judge did not err in determining that the confession was made voluntarily and in admitting it into evidence.

■ As indicated above, the State proved by O'Daniel that he identified the defendant as the man who robbed him. This identification was not made at a lineup, but was made at O'Daniel's office shortly after the crime was committed. O'Daniel had refused to identify two other men who were taken to his office by the police before the defendant was taken there alone. The Supreme Court of the United States in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, has apparently held that identification evidence obtained by exhibiting an accused in a lineup to identifying witnesses before trial in the absence of counsel must be excluded. We are not called upon in this case to determine whether an identification made in the manner in which the defendant was identified would have to be excluded under *Wade* and *Gilbert* if the holdings of those cases were retroactive. They are not. They were decided on June 12, 1967. On the same day the Supreme Court of the United States decided the case of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, wherein it was said: "We hold that Wade and Gilbert affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel *after this date.*" (Emphasis supplied.) The before-trial identification in this case occurred on February 13, 1967. There is language in *Stovall, Wade* and *Gilbert* which may indicate that the holdings in *Wade* and *Gilbert* will be applied to all confrontations for identification purposes which occurred after June 12, 1967, not just confrontations at lineups, except where a confrontation without counsel is imperative, as was held to be the case in *Stovall.*

**116**

■■ In several instances the trial court overruled objections interposed by counsel for defendant after the questions had been answered. Objection to a question must be made as soon as the question is stated. Willingham v. State, 261 Ala. 454, 74 So. 2d 241. None of the answers disclosed incompetency and there was no motion to exclude the answer. Willingham v. State, supra. So reversible error is not made to appear in any of the instances where the objection was interposed after the question was answered.

■ Objections by counsel for defendant were overruled in several instances where the question was not answered. Since the questions were not answered, reversible error does not appear. Allison v. Owens, 248 Ala. 412, 27 So.2d 785.

■ On direct examination O'Daniel testified that at the time of the robbery the robber was wearing a hat that "looked sort of charcoal gray or black." On cross-examination he described the hat in the same manner but added: " * * * when they brought him back to the station, he did have on a light colored hat. However, at Police Headquarters they showed me another hat which they said they had found." On re-direct examination, the witness testified without objection that the hat he saw at police headquarters was " * * * a dark *blue* felt hat and was the same style as the holdup man had and the same style this man had when they brought him back in. It was dark blue or a real dark hat." (Emphasis supplied.) Thereafter, the District Attorney, on further redirect examination, propounded to the witness O'Daniel the. following question: "Was that the same color hat [the hat the witness had seen at police headquarters] that he had on at the time you were held up?" An objection interposed by counsel for defendant was overruled, whereupon the witness said: "I couldn't tell for sure. I told them it was a dark hat. I told them that at the time I gave them the description and I still believe that it was a charcoal grey or black hat."

We think the question to which objection was interposed called for admissible evidence and the objection was properly overruled. But as we interpret the answer to the question, the witness said in effect that the hat which he saw at police headquarters was not the same color hat which the robber wore at the time of the robbery. Hence the answer of the witness was not prejudicial to the defendant. In fact, it was favorable to him. Talley v. State, 174 Ala. 101, 57 So. 445. Certain it is that we cannot say after an examination of the entire cause that the Court's action in overruling the objection to the question, "Was that the same hat that he had on at the time you were held up?" probably injuriously affected the substantial rights of the defendant. Supreme Court Rule 45.

The evidence tended to show that after the robbery the robber went to an alley a short distance south of the Union Station where he entered an automobile in which another man was sitting. The evidence further tends to show that that man was wearing a light colored hat. The robber and the other man left the place where the robber entered the black and white automobile which the evidence tends to show belonged to the mother of Willie Lee Davis. It was some time thereafter that the defendant was apprehended and there is evidence to the effect that Willie Lee Davis had been wearing a light hat a short time prior to the robbery. Hence the jury was free to draw an inference from the evidence that the defendant, at the time he was brought back to the station for identification, was wearing the hat of Willie Lee Davis

■ The defendant was apprehended in a taxicab in which was found a pistol which O'Daniel testified looked like the pistol which the robber pointed at him at the time of the robbery. The State offered the pistol in evidence. The Court inquired of counsel for the defendant as to whether there were any objections to the introduction of the pistol in evidence and counsel for the defendant replied, "No objection,

Your Honor." The Court then stated, "Received." Immediately thereafter counsel for the defendant said: "Your Honor, on second thought we object on the grounds that it has not been established that this is the gun that the holdup man had. The gun that was found and the gun that the holdup man had may have been different guns." The Court then stated: "I overrule the objection. It is received in evidence." Reversible error is not made to appear in this latter ruling of the trial court. The pistol was received in evidence only after counsel for the defendant expressly stated that there was no objections to its admission and it was only after the trial court stated that the pistol was received in evidence that counsel for defendant "on second thought" interposed an objection. This objection came too late. Moreover, we think O'Daniel's testimony and other evidence sufficiently identified the pistol as being the one used by the robber.

■ The trial court did not commit reversible error in admitting into evidence State's Exhibits Nos. 5, 6 and 7. Max Schulwolf, a witness for the State, testified that he owned "Max's Pawn Shop" and was a licensed pistol dealer; that he sold a .25 automatic pistol on a "lay-a-way" plan on February 6, 1967, to one Lavarso Davis. Schulwolf further testified that at the time the pistol was ordered the defendant Embrey was present. The witness further testified that the person who purchased the pistol on the "lay-a-way" plan as Lavarso Davis was one and the same person as Willie Lee Davis, who the evidence shows was a close associate of the defendant Embrey. Schulwolf further testified that when the pistol was delivered to Davis on February 9, 1967, the defendant Embrey was with Davis.

Exhibit 5 shows that on February 6, 1967, one Lavarso Davis paid to someone the sum of $15.75, but the witness Schulwolf testified that Exhibit 5 was "a copy of the lay-a-way that we wrote up on this .25 automatic that we sold." Exhibit 5 tends to show that the price of the article sold was

$36.75 and that the payment made on February 6 was $15.75, leaving a balance due of $21. State's Exhibit 6 shows the payment of the sum of $21 on February 9, 1967, which was the balance due on the purchase price of the pistol. State's Exhibit 6 bears the number 435210 and the evidence shows that the serial number of the pistol introduced in evidence and which was found in the taxicab in which the defendant was seated at the time he was apprehended bears that same serial number.

State's Exhibit No. 7 was identified by the witness Schulwolf as being a "retail dealer's record of pistols sold," which the witness stated had been filed with the Sheriff's Department of Montgomery County. The said exhibit shows that the pistol was sold to one Lavarso Davis; that the sale was made on February 6, 1967; that the pistol was a .25 automatic of Italian make and bore the number 435210.

Under the evidence which tends to show the close connection between the defendant Embrey and Davis and the tendencies of the evidence going to show that the pistol purchased from Schulwolf was the pistol used in the robbery, we entertain the view that the State's Exhibits 5, 6 and 7 were admitted into evidence without error.

■ The defendant called as a witness one Ida Mae Davis, who stated that she had known the defendant for approximately two weeks. Counsel for the defendant then propounded to the witness the following question: "What kind of a fellow was he? Was he a courteous fellow or was he irritable or what kind of a nature did he seem to have?" The State's objection to that question was properly sustained. Character or reputation, whether good or bad, cannot be proven by specific acts or conduct, but only by evidence of general repute. Williams v. State, 250 Ala. 549, 35 So.2d 567.

■ The witness Ida Mae Davis on direct examination testified that she did not know "generally about his [defendant's] reputation." In view of this statement of

the witness, the trial court properly refused to permit counsel for the defendant to further question the witness concerning the defendant's reputation.

After he had testified, the defendant called as a witness one Benny Joyce Riley, who stated that she had known the defendant "since he came here" and the evidence shows that he had been in Montgomery only about two weeks prior to the time of the robbery. The trial court did not commit reversible error in sustaining the State's objection to the following question propounded to witness Benny Joyce Riley: "Do you know his reputation for telling the truth in Montgomery?" All other questions aside, we are of the opinion that the Court ruled correctly in refusing to permit the witness to answer the question last quoted above in view of the short period of time which she said she had known the defendant in Montgomery. Moreover, as we have heretofore indicated, the defendant had previously testified, in effect, that he did commit the robbery and, consequently, we cannot see any injury to defendant in the Court's refusal to permit the witness Benny Joyce Riley to answer the question here under consideration.

During his argument to the jury the District Attorney made the following statement: "You have got to determine whether or not these juries are going to stop these robberies from going on." Counsel for the defendant objected to that statement and moved for a mistrial. The objection and the motion were denied by the trial court. We entertain the view that the trial court ruled correctly. The statement of the District Attorney was in substance merely an appeal for law enforcement and was not an abuse of the privilege of debate. Grissett v. State, 241 Ala. 343, 2 So.2d 399, and cases cited; Frost v. State, 225 Ala. 232, 142 So. 427.

Later on during the course of the District Attorney's argument to the jury the following occurred:

"MR. CROSLAND: * * * * * I am not talking about New York; I am not talking about Chicago; I am not talking about New Orleans or Miami or San Francisco but I am talking about Montgomery, Alabama—

"MR. SMITH: We object to that, if the Court please.

"THE COURT: Overruled.

"MR. SMITH: Exception.

"MR. CROSLAND: I am talking about right here in Montgomery, Alabama. We all know the crime rate is rising and rising and rising—

"MR. SMITH: We object to that, if the Court please.

"THE COURT: Overruled.

"MR. SMITH: We except."

The statement of the District Attorney that "I am not talking about New York; I am not talking about Chicago; I am not talking about New Orleans or Miami or San Francisco but I am talking about Montgomery, Alabama—" is altogether incomplete and we cannot say that it worked to the prejudice of the defendant. Perhaps those remarks were preceded by other remarks, but they are not included in the transcript before us.

We come now to a consideration of the statement of the District Attorney. "We all know the crime rate is rising and rising and rising * * *."

Counsel for the defendant argues that the statement just quoted was without support in the evidence, was prejudicial and, hence, asserts that the trial court erred to a reversal in overruling the defendant's objection to that statement.

Indeed, there was no evidence to support the statement of the District Attorney that "the crime rate is rising and rising and rising."

However, we entertain the view that the said statement was but a matter of com-

mon knowledge in that it has been made in the press, on radio and television for many, many months. It is only reasonable to assume that all members of the jury were fully aware of the fact that the crime rate is rising.

However, the defendant contends that under the holding of the Court of Appeals in the case of Black v. State, 23 Ala.App. 549, 129 So. 292, the statement of the District Attorney with which we are presently concerned should work a reversal of this case irrespective of the fact that it was a matter of common knowledge.

In the *Black* case the Solicitor in his closing argument said: "We have a wave of this thing going over the country now and you know it of your own common knowledge." The defendant's objection to that remark was overruled, whereupon the Solicitor stated: "You know of your own common knowledge there is a wave of this petty thieving over this country." Objection to that statement interposed by counsel for the defendant was overruled. In reversing the trial court, the Court of Appeals said as follows:

"'* * * This was the statement of a fact not in evidence, and, if offered, would have been irrelevant and inadmissible. This was not argument, and could furnish no safe or permissible aid to the jury in considering and weighing the testimony before them. Matters of common knowledge when relevant may be used as a basis for legitimate argument, but, where the matter of common knowledge itself is not relevant, the solicitor may not use it for the purpose of influencing the jury. The statement of the solicitor in this case is to the effect that, there being many petit thieves in this country, you must convict this defendant being so charged and put upon trial. The argument was prejudicial, and the ruling of the court thereon was error to a reversal."

In so far as our research discloses, the *Black* case, supra, has never been cited by this court or by the Court of Appeals.

If the *Black* case is authority for the proposition that it is reversible error for a prosecuting attorney in his argument to simply remind the jury of the prevalence of crime and that the crime rate is increasing, when those situations are known to the jury as a matter of common knowledge, then we decline to follow it.

We have said that it is sometimes difficult to draw the line between allowable argument and improper statements in argument. It is only when a statement is of a substantive, outside fact—stated as a fact—and which manifestly bears on a material inquiry before the jury that the Court should interfere and arrest discussion. Cross v. State, 68 Ala. 476; Sanders v. State, 260 Ala. 323, 70 So.2d 802; Johnson v. State, 272 Ala. 633, 133 So.2d 53. The remarks of the District Attorney here under consideration do not fall, in our opinion, within the bar of prejudicial argument.

In Olden v. State, 176 Ala. 6, 58 So. 307, a prosecution for murder, this court refused to reverse because the trial court declined to exclude the following statement of the solicitor made in the course of his argument to the jury: "It is said and it is sung, and it is on the lips of everybody that human life is the cheapest commodity in the community."

In Ex parte State ex rel. Davis, 210 Ala. 96, 97 So. 573 (reversing judgment of Tyler v. State, 19 Ala.App. 380, 97 So. 573), the solicitor in his argument said: "We have got too much killing around here." "Dont' you know we have?" "Do you know why?" These remarks were held not to be improper.

In Lambert v. Commonwealth, 219 Ky. 806, 294 S.W. 466, the statement of the prosecuting attorney that the crime wave in Chicago was such that the citizens of Louisville should protect themselves from the defendant was held to be within the bounds of proper argument.

In State v. Eckenfels (Mo.), 316 S.W.2d 532, it was said that it is proper for the

prosecuting attorney to comment on the prevalence of crime and to urge upon the jury law enforcement and the assessment of maximum punishment. See Holland v. State, 24 Ala.App. 199, 132 So. 601; Whitfield v. State, 22 Ala.App. 556, 117 So. 761; Floyd v. State, 22 Ala.App. 347, 116 So. 318, cert. denied, 217 Ala. 326, 116 So. 320.

■■■ We hold that the trial court did not err in overruling the objection of the defendant to the statement made by the district attorney that, "We all know the crime rate is rising and rising and rising * * *." There was no objection to the statement of the district attorney which followed the statement presently under consideration. Hence, it is not subject to review.

■■■ Counsel for the defendant in his argument to the jury made the following statement: "In states where they have abolished the death penalty, the crime rate has dropped." The trial court sustained the State's objection to that statement and we think properly so. We do not think that this holding is in conflict with our conclusion relative to the statement made by the District Attorney in regard to the rising crime rate, because we think that statement was a matter of common knowledge, whereas we cannot say that it is common knowledge that the crime rate has dropped in those states where the death penalty has been abolished. Moreover, the jury in this case did not inflict the death penalty and the statement of counsel for the defendant which we have quoted above was obviously made to the jury in an effort to avoid the death penalty. So no injury resulted to the defendant as a result of the action of the Court in sustaining the State's objection to that statement.

In brief filed here on behalf of appellant, the defendant below, complaint is made of the fact that the entire argument of the District Attorney is not included in the transcript.

The duties of official court reporters are prescribed in § 262, Title 13, Code 1940, the first sentence of which reads:

"The official court reporter shall attend in person, except as otherwise herein provided, the sessions of court held in the circuit for which he is appointed, and in every case where directed by the judge or requested by a party thereto, he shall take full stenographic notes of the oral testimony and proceedings, *except argument of counsel*, and note the order in which all documentary evidence is introduced, all objections of counsel, the rulings of the court thereon, and exceptions taken or reserved thereto. * * *" (Emphasis supplied)

■■■ If counsel wishes to preserve for review any ruling of the trial court made during closing argument, he must object and point out to the Court that portion of the argument to which he objects and when that is done it is made a part of the record for appellate review.

■■■ Counsel for appellant seems to entertain the view that this case is covered by the provisions of Act 249, approved June 24, 1943, General Acts 1943, p. 217, included in the 1958 Recompiled Code as Title 15, § 382(1) et seq., which is frequently referred to as the automatic appeal law. But that law applies only to cases where the death sentence is imposed. See Snell v. State, 278 Ala. 73, 175 So.2d 766. And we have held that the so-called automatic appeal law does not do away with the necessity of interposing objections to argument. Johnson v. State, 272 Ala. 633, 133 So.2d 53.

■■■ The trial court refused to give at the request of the defendant below the following written charge: "The State must prove its charge, and prove it beyond a reasonable doubt. The assertions of counsel are not evidence." That charge was refused without reversible error if for no other reason than that it was substantially and fairly covered by the Court's general

charge. § 273, Title 7, Code 1940; Cooper v. State, 277 Ala. 200, 168 So.2d 231. Aside from charging the jury that the burden of proof was upon the State to prove beyond a reasonable doubt "each of the essential elements * * * contained in the indictment," the trial court in its general charge admonished the jury that "assertions by either side are not evidence."

Although this appeal is not controlled by the provisions of the automatic appeal law, supra, we are admonished by the provisions of § 389, Title 15, Code 1940, to "consider all questions apparent on the record or reserved by bill of exceptions [transcript of the evidence], and must render such judgment as the law demands."

 Mindful of our duty under said statute, we have examined the record for any reversible error, whether pressed upon our attention or not. We find no reversible error in the record and the judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.