228 So.2d 843

Darwin PATTERSON

v.

STATE.

4 Div. 13.

Court of Criminal Appeals of Alabama.

Oct. 21, 1969.

Rehearing Denied Nov. 25, 1969.

**230**

Powell & Sikes, Andalusia, for appellant.

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

CATES, Judge.

Appeal from conviction of receiving, etc., stolen goods, viz. a Chevrolet motor car owned by Hertz Corp. Code 1940, T. 14, § 338. Sentence five years in the penitentiary.

I

July 19, 1968, Hertz rented the car in question. In August Mrs. Amos Perkins testified she bought it from Patterson.

The assistant city manager for Hertz in Pensacola, Florida testified, in part:

"Q Do you know where, if anywhere, that particular car was during the early part of July, 1968?

"A The car was in Pensacola, Florida.

"Q Do you know if it was rented out or leased out by Hertz to any one?

"A It was rented July 19th at 10:00 A.M. to Mr. Dan Buie at the Pensacola Airport.

"Q And was it returned by Mr. Buie to Hertz to your knowledge?

"A No, it was not.

"Q Was it returned by anyone to Hertz?

"A No.

"Q After that time did you ever see the car again?

"A Well, not until it was recovered here.

"Q Did you see it here?

"A I saw it here, yes.

"Q Where here?

"A At the courthouse.

"Q In Andalusia?

"A Right.

"Q And when was that?

"A This would have been the latter part of August.

"Q The latter part of August?

"A Right.

"Q And did you come to Andalusia?

"A Yes.

"Q Did you examine this particular car?

"A Yes.

"Q Did you check the serial number?

"A Yes.

"Q Was it the same one that I have asked you about already?

"A Yes, sir.

"Q Was it the same one that was on your rental agreement with Mr. Buie?

"A Yes.

"Q Did you or anyone else who works for Hertz to your knowledge see the car from the time Mr. Buie had it until you came to Andalusia?

"A No one did.

"Q To your knowledge?

"A To my knowledge."

This witness had also testified:

"Q Now Mr. Fuller, did Hertz register this car in Florida?

"A Yes, sir.

"Q And buy a tag for it?

"A Yes, sir, we bought a tag for it.

"Q What is that in your hand?

"A Tag receipt from Florida Vehicle Registration, registered in 1968, Chevrolet 4-door Impalla, Model No. 16439, in Pensacola, Florida.

"Q And what serial number was given on that tag receipt?

"A 164398S129336.

"Q Now is it a practice or custom of Hertz Corporation to keep tag receipt like that as a record; it is their regular course of business to tag receipts as records?

"A Yes, sir, we keep the tag receipts in our permanent file for the record on each car.

"Q Is this tag receipt kept in the regular course of business of Hertz Corporation?

"A Yes, sir."

We excerpt from part of Mrs. Perkins's testimony:

"Q Back in the early part of August, 1968, did you have occasion to buy an automobile from Darwin Patterson?

"A Yes, sir, I did.

"Q Would you describe that automobile to us?

"A    It was a white 4-door Hardtop Impalla Chevrolet, '68.

"Q    '68 Chevrolet Impalla?

"A    Yes, sir.

"Q    Now when was this that this transpired, please mam?

"A    I believe it was August 6th.

"Q    Where did you see Mr. Patterson, or where did this happen?

"A    Down at the Covington County Bank parking lot.

"Q    Now you say you bought a car from Mr. Patterson?

"A    Yes, sir.

"Q    And it was a 1968 Chevrolet?

"A    Yes, sir.

"Q    How much did you pay him for it?

"A    $1600.00.

"Q    How did you pay it?

"A    I gave him cash.

"Q    Gave him cash.    Did you get the car at that time?

"A    Yes, sir, I did.

"Q    Where was the car when you first saw it that day?

"A    It was on the parking lot at the Covington County Bank.

"Q    And did you drive it away from there at that time?

"A    Yes, sir, I did.

"Q    Had you seen this car before that time?

"A    No, sir, I had not.

"Q    Had you talked to Mr. Patterson about it before that time, about the transaction, about the car?

"A    Well, my husband had handled the transaction up until then.

"Q    How long did you keep this particular car?

"MR. POWELL: We object to her statement about what her husband did and move to exclude it.

"THE COURT: Yes, that answer is excluded.

"Q    How long did you keep that particular car?

"A    Four days.

"Q    What happened to the car?

"A    Well, Mr. Gantt and two deputies come out and told me it was stolen and brought it in.

*        *        *        *        *        *

"Q    About what time of day was it down at Covington County Bank that you bought the car from Darwin Patterson?

"A    Around 9 o'clock in the morning.

"Q    Now who else was there, if anyone?

"A    Well, there was some guy with him. I don't know who he was.

"Q    Did you know him?

"A    No, sir, I didn't.

"Q    Did Mr. Patterson give you a bill of sale for the car?

"A    He told me they were in the glove compartment.

"Q    He did.    And was it in the glove compartment?

"A    There was a tag receipt in there was all.

"Q    Did you look in the glove compartment down there in the parking lot to see?

"A    No, sir, I did not.

"Q    When did you look?

"A    After I got home.

"Q    And you found no bill of sale?

"A    Right.

"Q But you did find what?

"A A tag receipt.

\* \* \* \* \* \*

"Q Mrs. Perkins, did you ever receive from Darwin Patterson any bill of sale or other papers concerning the car?

"A No, sir, I did not.

"Q How much did you say you paid?

"A $1600.00.

"Q Have you recovered any of that $1600.00 from anyone?

"A $600.00.

"Q And who did you get that from?

"A Darwin.

"Q When was that?

"A That was on a Sunday after we had bought the car on Tuesday.

"Q Was it before or after the sheriff's office came and got the car?

"A It was afterwards.

"Q How was that paid?

"A In cash."

## II

The first contention is that Mrs. Perkins and her husband were accomplices. If so, then Code 1940, T. 15, § 307 would require corroboration of their testimony.

■ We consider that this contention is not pertinent here. We cannot, as a matter of law, say that the $1,600.00 paid by the Perkins to Patterson was so inordinately low as to show that they should have known Patterson was selling them a stolen car.

Even so, their .buying might be viewed as a separate and distinct act from Patterson's having the car up to delivery to the Perkins. See Fuller v. State, 40 Ala.App. 297, 115 So.2d 110(8).

■ Ordinarily the defendant has the burden of showing complicity under § 307,

supra. LaBryer v. State, 45 Ala.App. 33, 222 So.2d 361(9).

On a consideration of all the testimony of the Perkins, there was nothing substantial to prove a guilty scienter in their buying the car. Indeed, $600.00 was all they recouped on Hertz's reclaiming it.

We find no reversible error in the lower court's refusal of defendants requested Charges 5, 6, 7, 8, 9, 10, 11, 16, 17, 18, and 19. Charges 20 and 21 appear in our record only with the endorsement "signed."

No other substantial question appearing under Code 1940, T. 15, § 389, we consider the judgment below is due to be

Affirmed.

### On Rehearing

Counsel for appellant, in his brief accompanying his application for rehearing, states, among other things, "in the event that this Court does not grant this application for rehearing, we respectfully urge that \* \* \* this opinion should be extended to set out all of the suspicious circumstances quoted in the preceding part of this brief relating to the purchase of the car by the Perkins so that this matter can be properly reviewed by the Supreme Court of Alabama on certiorari."

Since the standards of review formerly employed by the Supreme Court of Alabama, whether adjectival law or substantive law, may still be viable, and also in view of the novelty of Act 987, September 12, 1969, we accede to this request, though without considering our action as a precedent. Our only revelation from on high is per Maddox, J., in striking the State's petition in the red lettered Ex parte State ex rel. Attorney General (1st Div. 611, Nov. 7, 1969), 285 Ala. 72, 229 So.2d 27.

### III

Appellant, in the brief of instant concern, has listed 23 items which he considers impinged on whether or not either or both of the Perkins was or were an accomplice or

accomplices of Darwin Patterson, the appellant. We shall list these items with our comment following the quotation of each one.

"1. Bill Fuller testified that the car was worth Thirty-One Hundred ($3100.00) Dollars."

Comment: This was opinion evidence and would indicate a fluctuation of $1,500.00 or approximately 50% of the car's price. We would be naive if we were not to recognize that a brand new automobile loses approximately 1/3 of its retail price upon the consummation of the first sale. "2. Bill Fuller testified that the retail value of the car was Thirty-nine Hundred Dollars."

Comment: "Retail" value we do not consider to be inflexibly equivalent to market value. The jury is not bound by opinion testimony. See Comment 1.

"3. Deputy Sheriff Arell Berry said that car drove like a brand new one."

Comment: None.

"4. Deputy Sheriff Arell Berry testified that if the car could have been purchased for Three Thousand ($3,000.00) Dollars it would have been a real bargain."

Comment: This, again, was opinion evidence.

"5. Mrs. Amos Perkins testified that she paid the defendant Sixteen Hundred ($1600.00) Dollars in *cash* for the car."

Comment: None.

"6. Mrs Perkins testified that she kept the car for four days before the sheriff repossessed it."

Comment: None.

"7. Mrs. Perkins testified that the tag receipt was in the glove compartment of the car and that she drove it home before looking into the car for a tag receipt or a bill of sale."

Comment: We had not been apprized of any provision which makes a state li-

cense receipt for an automobile into anything other than a certificate by the probate judge or appropriate license commissioner that the ad valorem taxes and the license fee for the tag number recited thereon have been duly paid to the proper official. The fact that no bill of sale was issued could have been an appropriate subject for the jury's consideration had a written instruction, setting forth the tenor of § 2–201 of the Uniform Commercial Code which requires a written bill of sale on the sale of goods priced at $500.00 and upwards, been requested.

"8. Mrs. Perkins testified that the defendant did not give her the key to the automobile and that it was parked in the parking lot of the Covington County Bank with the key in it."

Comment: None.

"9. Mrs. Perkins testified that the tag receipt in the car was issued from Luverne, Crenshaw County, and was made out to B. G. Smith."

Comment: The jury could well have believed that B. G. Smith, the purported licensee, was a fictitious person. "10. Mrs. Perkins testified that she never asked for a bill of sale on the car from the defendant."

Comment: None.

"11. Mrs. Perkins testified that she appeared before the Grand Jury and testified against Patterson without signing a waiver of immunity."

Comment: None.

"12. Mrs. Perkins testified that at the time she purchased the car from the defendant, she borrowed Twelve Hundred ($1200.00) Dollars from the bank and paid another Four Hundred ($400.00) Dollars out of cash money she had on hand."

Comment: None.

"13. Mrs. Perkins testified that when she borrowed the money from the bank,

she did not give a mortgage on the car but rather gave a mortgage on her home."

Comment: We fail to see any materiality in whether or not the money was borrowed on the collateral of real estate rather than on personal property. The principle of res inter alios acta covers this point.

"14. Mrs. Perkins testified that the entire payment of the Sixteen Hundred ($1600.00) Dollars was made to the defendant Patterson in cash."

Comment: The fact that Mrs. Perkins paid all cash could be as equally persuasive that she was not suspicious; for had she been so, it could be reasoned that she would have insisted on payments by installment pending investigation of Patterson's title.

"15. Mrs. Perkins testified that immediately after paying the money to the defendant she drove the car straight home to Loango and then on the same day drove it to her sister's home in Fort Deposit."

Comment: None.

"16. Mrs. Perkins testified that during the four days she had the car, she made no effort to transfer the tag receipt from the name of B. G. Smith to her own name."

Comment: We are aware of no requirement of state law which requires a formal transfer of a tag receipt from vendor to vendee after the issuance of a license for a given year except Code 1940, T. 51, § 706, as amended, which is designed not for title registration searches but is for the benefit of police, injured persons and tax officials.

"17. Mrs. Perkins testified that after she left the bank with the car, she checked out of work for the day and went by the courthouse where the Probate Judge's office is located and made no effort to transfer the tag receipt to her own name."

Comment: See 16.

"18. Mrs. Perkins testified that she gave the cash money to the defendant without ever test driving the car or having a mechanic check it."

Comment: None.

"19. Amos Perkins testified that the car was in good condition."

Comment: None.

"20. Amos Perkins testified that he had previously been convicted for forging a government check."

Comment: See Code 1940, T. 7, § 434, which leaves the question of credibility of a person convicted of a crime involving moral turpitude as a jury question.

"21. Amos Perkins testified that the car was worth Thirty-five Hundred Dollars ($3500.00)."

Comment: None.

"22. Amos Perkins testified that his wife borrowed Twelve Hundred ($1200.-00) Dollars from the bank on the purchase price of the car and took another Four Hundred ($400.00) Dollars to complete payment of the Sixteen Hundred ($1600.00) Dollar purchase price."

Comment: None.

"23. Amos Perkins testified that he made no effort to get the tag receipt on the car transferred to his wife."

Comment: See 16 above.

We have carefully considered this application and are at the conclusion that the basic claim is that the Perkins paid too little for the car. Presumably the corollary of this contention would be that they were, or should have been, on notice that the car was stolen.

As a matter of law, we are unwilling to say that the sale of a used automobile for ½ price during its first year of manufacture is alone enough to constitute notice that the car has been stolen.

Alabama now has no title registration law for motor vehicles. (C. F. Scott v. Parker, 216 Ala. 321, 113 So. 495). Accordingly, we consider that, in a case of this sort, the delivery of the car with the ignition key for a substantial sum of money is sufficient to support this review.

### IV

■■ Finally, the corroboration statute is in derogation of the Common Law. Therefore, its scope is to be strictly construed. Alexander v. State, 281 Ala. 457, 204 So.2d 488. Here, if the Perkins received, etc., stolen goods wittingly, then this act is distinct from Patterson's reception which was chronologically anterior to the Perkins's purchase. It follows that there could not be a joint indictment, hence, they could not be accomplices within the scope of Code 1940, T. 15, § 307.

### V

Appellant urges upon us consideration of claimed impropriety in argument by the District Attorney to the jury, saying:

"Likewise in its opinion in this case, this Court has failed to comment on the improper argument of the District Attorney when he commented about law and order in Washington, D. C., New York City, Chicago, Los Angeles or Miami and observed that the law was going to be enforced in Andalusia (R. 69). We again insist that this argument made in the heart of Wallace Country two weeks before the last presidential election was the most prejudicial remark that could have possibly been made. * * *"

■■ Perhaps all that was said in Embrey v. State, 283 Ala. 110, 214 So.2d 567 is not here apropos or persuasive. Nevertheless, the jury of instant concern was sitting in the City of Andalusia, Alabama, having been made up from a jury roll drawn from Covington County. A jury is not empowered to waive the law or any of its rules—its only power is to take the law of the case as given by the trial judge and apply it to the facts as developed on the trial. Out of this process comes the verdict. We consider that, in arguing evidence in criminal cases, remarks about law enforcement are not per se prejudicial.

The application for rehearing is

Overruled.

ALMON, J., concurs in result.