275 So.2d 675

**Guyward Wayne MILLER**

**v.**

**STATE of Alabama.**

**SC 264.**

Supreme Court of Alabama.

March 29, 1973.

William J. Baxley, Atty. Gen., and P. B. McLauchlin, Jr., Sp. Asst. Atty. Gen., Ozark, for the State.

Lawrence B. Sheffield, Jr., Birmingham, for appellant.

FAULKNER, Justice.

If a social censurer ever sought a person to give a testimonial against the sensuous delights of "wine, women and song", Michael Ray Foust, age 29 years, of Decatur, Alabama, may be a likely prospect. Mr. Foust attended a party on the evening of January 16, 1971, seven-thirty-ish, at the mobile home of June Reynolds, located at Chandler's Trailer Park, Cullman, Alabama. There were several men and women guests in attendance. Drinks, dancing, crap shooting, and strip poker, inter alia, were the diversive merriments the guests enjoyed as they relaxed from the week's labor just completed. It was Saturday

night. Mr. Foust had some drinks, "faded" some dice players, danced, played cards, and with the assistance of a pill called "jar" dropped in his drink, he became anesthetized in one of the bedrooms of the 12′ x 60′ mobile home. While physically insensible, Foust was "rolled", to use vernacular language. He testified he awoke around 4:30 A.M. the following day when a train came by; that he felt as though there were birds flying around in his head; he couldn't see; his eyes wouldn't focus; he couldn't read a newspaper; the world was blurry. Foust testified that he was robbed of $550.00 cash ($50.00 of which he had won in the crap game), a cashier's check payable to his employer in the amount of $5,580.00; his driver's license, social security card, State National Bank Credit Card, BankAmericard, K–Mart, and Standard Oil credit cards, his library card, pictures of his wife and two children, and two diamond rings which he wore on his fingers, having a combined value of approximately $800.00. The defendant, Guyward Wayne Miller, whom Foust had known for thirteen or fourteen months, and who was also present at the party, was indicted for robbery by the Grand Jury of Cullman County. He was convicted of grand larceny by the petit jury who heard the case on a plea of not guilty. He was sentenced to ten years in the State penitentiary. Miller appealed from the conviction and sentence to the Court of Criminal Appeals on the grounds that the testimony of accomplice Wanda Richter was not sufficient to corroborate the testimony of accomplice Pam Barnes, and that the testimony of June Reynolds and Jane Reynolds was insufficient to corroborate the testimony of accomplices Pam Barnes and Wanda Richter, and therefore the case should have not been submitted to the jury on his motion to exclude the evidence.

On Feburary 14, 1973, the cause was transferred to this court from the Court of Criminal Appeals.

■ The motion having been denied by the trial judge and the case submitted to the jury, we now turn to the question of whether the trial judge erred. Title 15, § 307, Code of Alabama 1940, Recompiled 1958, provides that a conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient. whether there was any evidence corroborating the accomplices and tending to connect Miller with committing the offense was a question of law for the trial court. Moore v. State, 30 Ala.App. 304, 5 So.2d 644 (1941); Fagan v. State, 35 Ala.App. 13, 44 So.2d 634 (1949). The probative force, credibility, and sufficiency of such evidence is for the jury. The proper test for determining whether there was sufficient corroboration of the testimony of an accomplice has been set out in Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947). The court held that, first, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. This test was followed in Smith v. State, 45 Ala.App. 63, 223 So.2d 605 (1969). We apply the same test here. It is to be remembered that Wanda Richter and Pam Barnes admitted their involvement in the crime, and both testified on behalf of the State. A portion of Barnes' testimony was as follows:

"Q. (BY MR. BLAND:) Just tell what happened * * *.

"A. Well, Guyward went through his pockets and got his money, you know, he was rolling him over on the bed, and Judy was kind of leaning over his face, so he wouldn't—

"MR. SHEFFIELD: We object.

"THE COURT: Sustained.

*     *     *     *     *     *

"Q. (BY MR. BLAND:) I will ask you this, will you state to the jury whether or not you saw this defendant, Guyward Miller, take the money out of Mickey Foust's pocket?

"A. Yes.

"Q. And then what happened next?

"A. He left, Guyward left the room.

"Q. Who left the bedroom?

"A. Guyward did.

"Q. All right. Now, after he left the bedroom then, would you state, Pam, what you did if anything?

"A. Well, before—right before he left the room he said that he didn't think he got all of his money out of one of his pockets, and when he left I put my hand in one of them, he said he didn't—"

The witness further testified that after Miller left the bedroom she met him in another bedroom, and Miller had the money, wallet, and credit cards of Foust in his hands. Miller gave her $20.00 to keep her mouth shut. She hid the wallet and credit cards in her bra. She threw these items from her car along the highway travelling to a trade school which she attended. They were found later by the sheriff whom she had told where they would be.

The testimony of Wanda Richter showed that she had been indicted for robbery for her participation in the crime and had entered a plea of guilty to charges of attempt to commit a felony. She also testified that the defendant had called her into a bedroom at the trailer of Judy Johnson, where they met after leaving the Reynolds trailer, and inquired whether she knew how many one-hundred dollar bills Foust had on him. During the inquiry Miller was holding money in his hands and there were three separate piles of money on the bed. On cross-examination Richter testified that she thought that a substance called "jar" was in the drink given Foust, but that she did not tell anyone that she administered a drug to Foust. However, she had testified on direct examination that she was the person to whom Judy Johnson handed a drink in the Reynolds trailer, and when Johnson shook her head, she set it down. Foust picked up the drink, drank it, and appeared ill. He vomited, shook, and appeared dizzy.

We come now to the question of whether there was any other evidence corroborating evidence tending to connect Miller with the crime. The State introduced the testimony of June Reynolds and Jane Reynolds to corroborate the evidence of accomplices Barnes and Richter. We pretermit the testimony of accomplice Richter to corroborate the testimony of Barnes. Zero plus zero equals zero. June testified about the drinking, dancing, and "cutting up" in her trailer by her guests. She included the defendant, the named accomplices and Judy Johnson, among others. At one time during the evening she looked into a bedroom and saw Foust lying on the bed. Judy Johnson, Barnes, and Miller were there in the room with Foust, who "looked like he was asleep or something." At that time Judy Johnson had her hand in Foust's pocket; Miller was standing by the bed where Foust lay. She left and mingled with the crowd of people, and later left her trailer and went over to Judy Johnson's trailer. She testified on cross-examination that she was not positive who was in her bedroom. She was positive Pam Barnes and Miller were in that room but she didn't know whether Judy Johnson had her hands inside or outside the pockets of Foust.

Jane Reynolds testified that she went to the party in the trailer of her sister June; that she spent most of her time there in the living room except once when she and June went to the back bedroom of the trailer:

"Q. What did you and June do when you went to the back bedroom?

"A. We opened the door and turned and went back in the living room.

"Q. Did you look in the room?

"A. Yes, sir.

"Q. Did you see anyone in there?

"A. Yes, sir.

"Q. Who did you see in this bedroom?

"A. Mickey Foust, Judy Johnson and Guyward [Miller].

"Q. And what were they doing if anything?

"A. Mickey looked like he was passed out on the bed and Judy was sitting on the bed and Guyward was sitting on the bed."

She testified that she did not see anything in Miller's hands; that Judy Johnson had her hands on Foust's back.

■ Since these are the witnesses relied on by the State for corroboration, the question is whether they were also accomplices. We hold that they were not. The test of whether a witness is an accomplice is, could the witness have been indicted and convicted of the offense charged either as principal or accessory. If he could not, he is not an accomplice. Dykes v. State, 30 Ala.App. 129, 1 So.2d 754 (1941); Snowden v. State, 27 Ala.App. 14, 165 So. 410 (1936); Ash v. State, 81 Ala. 76, 1 So. 558 (1886). Nothing in the record shows that they could have been indicted for the offense.

■ The next question to be answered is whether these witnesses, June and Jane Reynolds, furnished sufficient corroborative evidence. We answer in the affirmative. The corroborative evidence need not be strong, nor sufficient of itself to support the conviction. The criterion is that it legitimately tends to connect the accused with the offense. Moore v. State, supra; 23 C.J.S. Criminal Law § 812(1), et seq.

Also, in *Moore* it was declared that the entire conduct of the accused may be surveyed for corroborative circumstances, and if from them his connection with the offense may be fairly inferred, the requirement of the statute is satisfied. And, under some circumstances proof of proximity and opportunity is held to be sufficient in corroboration of an accomplice. Ross v. State, 74 Ala. 532 (1883); Crumbley v. State, 26 Ala.App. 24, 152 So. 55 (1933).

We hold that the sufficiency of the corroborative evidence of the testimony of the accomplices to take the case to the jury was a question of law addressed to the decision of the court. *Moore,* supra. The probative force, credibility, and sufficiency was for the jury to decide. It was for the jury to determine the guilt or innocence of the accused. Sorrell v. State, supra; Cobb v. State, 20 Ala.App. 3, 100 So. 463 (1924).

■ This court should not capriciously disregard the finding of the jury and the judgment of the trial court thereon, unless a legal and valid reason therefor appears (*Fagan,* supra) and none is apparent in this case.

■ The final alleged error raised in this appeal is whether the trial court erred in refusing defendant's recross-examination of accomplice Wanda Richter after re-direct by the District Attorney. This was a matter addressed to the sound discretion of the trial court and his ruling was not error. Butler v. State, 38 Ala.App. 527, 93 So.2d 441 (1956), cert. denied, 265 Ala. 694, 93 So.2d 445 (1957); Houston v. State, 208 Ala. 660, 95 So. 145 (1923).

Upon review of the entire record we find no error.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.