287 So.2d 245

**William Harvey SHARPE**

v.

**STATE.**

**7 Div. 248.**

Court of Criminal Appeals of Alabama.

Dec. 4, 1973.

Love, Love & Lawrence, Talladega, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

HARRIS, Judge.

■ Appellant stands convicted of grand larceny and was sentenced to five (5) years imprisonment in the penitentiary. He was accused of breaking into an oil and gasoline truck and stealing six hundred and twenty dollars in cash, the personal property of N. L. Campbell and Sons, Inc., a corporation, based in Gadsden, Alabama. The theft is alleged to have occurred in Talladega County on April 7, 1972, but appellant was not indicted until March 29, 1973. He was convicted on April 24, 1973. The state's case was a weak one, but there was enough incriminating evidence to make his guilt vel non a jury question and we affirm the judgment of conviction.

Mr. S. B. Calhoun, an employee of Campbell and Sons, was driving a ton and one-half International van-type truck on April 7, 1972, on an assignment to call on several service stations in Talladega County to deliver oil and gasoline and to collect for the products sold and delivered. On this trip he stopped at a service station and grocery store owned and operated by appellant and his mother. He made a delivery at appellant's place of business and collected $620.00 in cash and around $1,200.00 in checks. When he first arrived, he saw appellant on the outside of the service station where he and one William Mitchell were engaged in pulling dents out of an old model Cadillac automobile which belonged to Mitchell. Appellant left Mitchell and went inside the store and was present when appellant's mother paid Calhoun $620.00 in cash and $1,200.00 in checks from various customers. Mr. Calhoun put the money and checks into a sealed envelope and carried it to the truck and put the envelope into a leather case on the floorboard of his truck and threw a coat or windbreaker on top of it. Appellant followed Calhoun out of the store and returned to the Cadillac where Mitchell was still pulling out dents. Calhoun testified that both appellant and Mitchell were in a position to observe him as he put the collections on the floorboard of the truck. The time was about 11:30 A.M. His next stop was at M & M Grocery, a distance of around two and one-half (2½) miles from appellant's place.

When Mr. Calhoun got to M & M Grocery, he locked both doors to the cab of his truck and carried the keys with him. Upon entering this store, the owner gave him an order and he got the oil house keys from the store operator, a Mr. Cleveland Dennis. He went outside, unlocked the oil house, went to his truck and unlocked the rear doors, and put seven or eight cases of oil in the oil house. He locked the rear

doors to his truck and re-entered the store. In looking out the window, he saw the Cadillac that had been at appellant's place of business. It was now parked at Bass' Store nearby and he saw William Mitchell walking toward the front entrance of the M & M Grocery. Mitchell came into the store and purchased a penny-piece of bubble gum from Mr. Dennis. Mitchell left the store and went directly to his Cadillac and drove away. Mr. Calhoun stayed inside the M & M Grocery frcm fifteen to twenty minutes before returning to his truck. When he got to the truck he noticed the right vent on the door had been opened by popping it out of the hinge. He opened the door and looked at the leather case. The case was open and three envelopes containing the $620.00 and all the checks were gone. He went to a telephone and made three calls. He first called the Talladega Police Department. The second call was to his company's office in Gadsden, and the third call was to appellant. He asked appellant for the name of the man who owned the Cadillac. Appellant told him the man's name was William Mitchell. Mr. Calhoun then told appellant, "Someone broke in my truck." He asked appellant if payment could be stopped on the checks and appellant replied no, that he did not know of any.

Mr. Calhoun further testified that it would take only five minutes to go from appellant's service station and store to the M & M Grocery.

On April 8, 1972, William Mitchell was arrested and charged with the theft of the money from this truck. On April 26, 1972, Mitchell had a preliminary hearing on this charge. Appellant was subpoenaed as a state witness but he was never called to the witness stand. The record is silent as to whether Mitchell was bound over to the grand jury.

Mitchell testified as a witness for the state in the prosecution of appellant. On both direct and cross-examination, he admitted felony convictions running back to 1957, including four (4) cases of burglary, one (1) case of forgery, and one (1) for buying and receiving stolen property. At the time he testified in this case, he was serving two concurrent ten-year sentences for burglary.

Mitchell testified that when Mr. Calhoun got into the International truck at appellant's place, appellant told him there was three or four thousand dollars in that truck and asked Mitchell if he wanted to help him get the money. Mitchell replied that he (Mitchell) already had enough cases coming up against him and he declined the invitation; that appellant told him that he would get Eugene Singleton to help him and appellant went to a house nearby where Singleton was asleep. He waked him and Singleton came to the station and got into an old Chevrolet model car which belonged to Singleton and they went in the same direction that the truck had gone; that Mitchell got into his Cadillac and went to T. J. Moore's service station, where he purchased $3.00 worth of gasoline on credit and then drove to Bass' store and parked. He walked over to the M & M Grocery and saw the International truck parked near the gas pumps. He went inside, bought a penny-piece of bubble gum, walked back to his Cadillac and drove straight to his apartment, which was on the second floor of a house. From the bathroom and kitchen windows of his apartment, he could see the truck still parked at M & M Grocery. On the way to his apartment he saw appellant and Singleton in Singleton's car parked behind a stack of concrete blocks on a side street near a vacant lot.

Mitchell further testified that when he got to his apartment, his wife, Jo Neil Mitchell, had dinner on the table, but he went straight to the bathroom where he watched appellant and Singleton; that when he did not come out of the bathroom immediately, his wife came in to see what was delaying him and she saw him looking out the window and she stepped on a step-

up or platform of some kind and looked out the window also. Both Mitchell and his wife saw appellant and Singleton leave the car and walk across the field to the truck parked in front of M & M Grocery. They they were gone three of four minutes and Mitchell and his wife saw them running back to Singleton's car. Appellant, who had something in his hands, and Singleton got into the car and drove hurriedly away. Mitchell and his wife got into his car and drove immediately to appellant's place of business where Mitchell engaged appellant in a conversation. This conversation did not come out during the trial. Jo Neil Mitchell testified to substantially the same thing as Mitchell concerning the activities of appellant and Singleton before and after the truck was broken into.

When Mitchell was "booked" and searched at the jail, he had ten or twelve dollars on his person. On one of Jo Neil's visits to the jail to see Mitchell, he told her to go see appellant about getting someone to get him out of jail on bond. Jo Neil reported that appellant said he had a man working on it and pointed to a man who was driving away from his station, identifying him as that man. The man's name was Mr. Melvin Gooden. Mitchell did not get out of jail on bond, but while he was in jail, Mr. Melvin Gooden brought him $200.00 to pay a lawyer to represent him.

Appellant produced witnesses to prove that he did not leave his station at any time after the International truck left his place around 11:30 on the morning of April 7, 1972. He took the stand and denied that he left his place with Eugene Singleton, denied that they ever parked behind any concrete blocks, denied that he ever had a conversation with Mitchell relative to three or four thousand dollars being in Calhoun's truck, and specifically denied that he broke into the truck and stole any money. In short, just like his plea said, he was not guilty of the charge in the indictment upon which he was put to trial.

The testimony for the state and that for appellant was in sharp conflict. In this state of the record, a reviewing court cannot weigh the evidence or test the credibility of the witnesses, and a verdict thereon is conclusive on appeal. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Stephenson v. State, 28 Ala.App. 418, 185 So. 910; Fuller v. State, 269 Ala. 312, 113 So.2d 153.

Appellant strongly contends that he was convicted on the uncorroborated testimony of William Mitchell, who he claims was his accomplice in the scheme to steal the money from the truck. This contention casts appellant in an inconsistent position. He denied any participation in any form or fashion in the theft of the money. His position is that the state failed to prove that he was ever in the vicinity of the truck when the money was taken, but if there was any such proof then Mitchell was an accomplice and his testimony was not corroborated. Mitchell's testimony put appellant in an automobile with Eugene Singleton a short distance from the truck. He saw them walking toward the truck where they remained three or four minutes and saw them running from the direction of the truck back to the car with something in appellant's hand. He saw them get in the car and speed away. According to Mitchell he refused appellant's invitation to steal from the truck and the undisputed evidence shows that Mitchell was never around the truck when it was broken into and the money was taken.

■ Ordinarily, the defendant has the burden of showing complicity under Title 15, Section 307, Code of Alabama 1940. Patterson v. State, 45 Ala.App. 229, 228 So.2d 843; LaBryer v. State, 45 Ala.App. 33, 222 So.2d 361.

■ The trial court did not orally charge the jury on the law of the uncorroborated testimony of an accomplice. There were no written charges requested by the appellant embodying this principle

**538**

of law. At the conclusion of the oral charge, appellant announced that he was satisfied. It thus appears that the claim that Mitchell was an accomplice is raised for the first time on appeal. If Mitchell was an accomplice, and we do not so hold, the testimony of his wife was ample to corroborate his testimony and present a jury question. Fairbanks v. State, 46 Ala. App. 236, 239 So.2d 908; Smith v. State, 45 Ala.App. 63, 223 So.2d 605.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.