TYSON, Judge.
Kevin Eric Watts was indicted for murder during the course of a robbery. The jury found the appellant “guilty of the offense of murder as charged in the indictment.” He was sentenced to life imprisonment without parole as a habitual felony offender.
Haze Combs testified that he operates C & S Package Store on First Avenue North in Birmingham, Alabama. On February 12, 1985 his daughter, Carolyn Hodges, opened the store at 2:00 p.m. Combs arrived at 2:30 and stayed until 3:45 p.m., when he left to run some errands. His daughter remained in the store. When Combs returned at 4:45 p.m., he found his daughter lying on the floor in the caged-in area of the store. He felt for her pulse and then called the ambulance.
Dr. Robert Brissie performed an autopsy on Carolyn Hodges. He concluded that she died as a result of “blood loss secondary to a contact gunshot wound to the neck.” (R. 193).
Combs stated that approximately $50.00, some whiskey, cigarettes and a .357 magnum gun were found missing from his store. Further he testified that, sometime after this incident, a man named James Lowery came to the C & S Package Store. After a conversation with Lowery, Combs called the police.
Officer Steven Donaldson of the Birmingham Police Department arrived at the scene at 5:20 on the evening of February 12, 1985. He secured the scene until the detectives arrived.
Fred Hedgepeth, the evidence technician, recovered a lead projectile from the caged-in area of the store. Five latent prints were also lifted at the scene.
David Higgins testified that he is a firearms and toolmark examiner for the Department of Forensic Sciences. After examining the lead projectile found at the scene of the homicide, he determined it was a .38 or .357 caliber projectile.
Joy Lance, the fingerprint technician for the Birmingham Police Department, stated that she compared the appellant’s fingerprints to the latent prints that were lifted from the scene in question. She testified that the latent prints were of insufficient detail to make a comparison. She also examined photographs of other prints taken from the scene. None of these prints matched the appellant’s fingerprints.
James Lowery testified that he was a trustee at the Jefferson County Jail in Feb *1058 ruary of 1985. Sometime between the 26th and 28th of February, 1985, Lowery overheard a conversation between the appellant and another person. The appellant asked the other person how much time he was going to get for a robbery and an accessory to a murder. The appellant stated four people were involved. He said that “they” went into the store a few times to make sure that there weren’t any video cameras. Then “they” killed the woman so she couldn’t testify.
The following is a portion of Lowery’s testimony on direct examination.
“Q. Any mention of who they had robbed?
“MR. WILKINSON: Object. This is getting leading and suggestive. He has asked about the conversation and he is trying to suggest.
“THE COURT: Overrule as to who. Go ahead. You may answer.
“A. That’s all I know is it’s a store over between about Third and Sixth Avenue, Sixth Avenue South, Mr. McCombs’ (sic) store.
“Q. Mr. McCombs’ store?
"A. It’s called C & S store.” (R. 300).
Lowery testified that, when he was released from jail, he went to the C & S Package Store and talked to Combs. A few days later, he talked to the police.
On cross-examination, the appellant stated that no places were mentioned in the appellant’s conversation with the other person.
Anthony Nix testified that on February 12,1985 he was picked up by the appellant. In the car with appellant were Stewart Hildreth and a person called “Little Dove”. The three were drinking beer and Nix asked for a beer. He was told that there weren’t any more beers but they could get him some because they were going to “snatch” some beer.
The appellant then drove and parked at a filling station next to the C & S Package Store. Nix remained outside by the car as a lookout. The other three went in the store. After a few minutes Nix walked toward the package store. He heard a shot and looked in the store and saw the appellant and Hildreth standing outside the caged-in area of the store.
Nix then went back to the car. “Little Dove” came back to the car with an armful of whiskey. The appellant had a gun that looked like a .38 when he went into the store and when he came back to the car. Nix then drove off.
In the car “Little Dove” asked the appellant why he shot the lady and the appellant replied “because I wanted to.” (R. 331). The appellant told Nix that he didn’t get much money. Nix then got out of the car.
I
The only issue raised by the appellant on appeal concerns the sufficiency of the corroboration of Nix’s testimony. The law on the sufficiency of corroboration evidence was recently summarized by this court in Lynn v. State, 477 So.2d 1365 (Ala.Crim.App.1984), reversed on other grounds, Ex parte Lynn, 477 So.2d 1385 (Ala.1985). In that case, Judge Taylor, speaking for this court wrote:
“ ‘A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient. Ala. Code (1975), § 12-21-222. The procedure commonly employed for determining whether sufficient evidence exists to corroborate the testimony of an accomplice is a ‘subtraction process.’ Thompson v. State, 374 So.2d 388 (Ala.1979); McCoy v. State, 397 So.2d 577 (Ala.Crim.App.1981); Kimmons v. State, 343 So.2d 542 (Ala.Crim.App.1977). It consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973); Ware v. *1059 State, 409 So.2d 886 (Ala.Crim.App.1981) (emphasis supplied). The necessary-quantum of corroborative evidence in such a case was addressed most recently in Scott v. State, 460 So.2d 1364 (Ala.Crim.App.1983), reversed on other grounds, Ex parte Scott, 460 So.2d 1371 (Ala.1984). In Scott, the Alabama Supreme Court stated that the ‘corroborative evidence does not have to be very strong, or even sufficient to support a conviction, but merely must tend to link the accused with the offense,’ citing Miller v. State, supra (emphasis supplied). Our controlling authorities have consistently held that corroborative proof need merely tend to connect the defendant with the commission of the offense. See, e.g., Thompson v. State, supra; Miller v. State, supra; Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947); Ross v. State, 74 Ala. 532 (1883); Early v. State, 392 So.2d 548 (Ala.Crim.App.1980), cert. denied, Ex parte Early, 392 So.2d 551 (Ala.1981); Andrews v. State, 370 So.2d 320 (Ala.Crim.App.), cert. denied, Ex parte Andrews, 370 So.2d 323 (Ala.1979); Smith v. State, 45 Ala.App. 63, 223 So.2d 605 (1969); Moore v. State, 30 Ala.App. 304, 5 So.2d 644 (1941); Crumbley v. State, 26 Ala.App. 24, 152 So. 55 (1933).
“Whether an accomplice’s testimony is properly corroborated is a question of law for the trial court. Smith v. State, 230 Ala. 413, 161 So. 538 (1935); Reeves v. State, 34 Ala.App. 186, 38 So.2d 24 (1948). .The duty of the court is to determine whether there is sufficient evidence which tends to connect the defendant with the commission of the crime, pursuant to the aforementioned test. Magouirk v. State, 49 Ala.App. 420, 272 So.2d 625 (1973); Miller v. State, supra; White v. State, 48 Ala.App. 111, 262 So.2d 313 (1972). If such evidence indeed exists, the court must submit it to the jury. It is then the jury’s role to determine the weight and sufficiency to be accorded such evidence. Luther v. State, 47 Ala. App. 647, 259 So.2d 857 (1972); Smothers v. State, 38 Ala.App. 153, 83 So.2d 374 (1954).’ ”
Lynn, supra at 1369-70.
Our review of the record leads us to the conclusion that Lowery’s testimony does tend to connect the appellant to the offense in question. Although Lowery did equivocate somewhat during cross-examination as to where this offense occurred, his testimony on direct did directly link this appellant to this murder. Based on this testimony, the trial judge properly submitted this case to the jury. The conflicts in Lowery’s testimony were for the jury to resolve. Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert. denied, 378 So.2d 877 (Ala.1979).
Lowery’s testimony on direct examination about where this offense occurred is further strengthened by the fact that Lowery went to the C & S Package Store and talked with Combs before he talked to the police. After this conversation, Combs contacted the police. Obviously, Lowery had a reason to go to this particular place. As a result of Lowery’s conversation with Combs, the police were contacted. This evidence supports Lowery’s testimony that the murder which he heard the appellant talk about did, in fact, occur at the C & S Package Store.
Therefore, we find that Nix’s testimony was sufficiently corroborated by Lowery’s testimony. The trial judge properly denied the appellant’s motion for judgment of acquittal. Cumbo, supra.
The judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.